Spencer, Ch. J.,
delivered the opinion of the court. In consider ng this case, these facts will be assumed : that the defendant has omitted to comply with the requirements of the acts of 1801 and 1813; that the dam across the Saranac has not been altered so as to admit the passage of salmon into the waters above it; and that, prior to the erection of a dam across the Saranac, at its mouth, salmon passed up that river, above the present dam, I shall not notice several minor exceptions to. the indictment, which were taken on the argument, as I prefer placing my opinion on the broad question, whether, under the facts proved, the defendant’s dam can legally be considered and treated as a public nuisance.
From an examination of the authorities which I have been able to consult, I am satisfied that thedefendanthasa.com- *174 píete and exclusive ownership of the Saranac, from its confluence with the lake, so far as he has succeeded to the rights of Z. Platt. Lord Hale, in his treatise de jure maria et bra-chionum ejusdem, edited by Mr. Hargrave, (pages 8 and 9,) says, “ There be some streams or rivers, that are private, not only in propriety and ownership, but also in use, as little streams or rivers that are not a common passage for the Icing’s people. Again, there be other rivers, as well fresh as #salt, that are of common or public use for carriage of boats and lighters, and these, whether they are fresh or salt, whether they flow and reflow, or not, are, prima facie, publici juris, common highways for a man or goods, or both, from one inland town to another.” “ Thus (he observes) the rivers of Wey, of Severn, of Thames, and divers others, as well above the bridges and ports, as below, and as well above the flowings of the sea, as below, and as well where they are become private property, as in what parts they are of the king’s property, are public rivers, juris publici; and, therefore, all nuisances and impediments of passage of boats and vessels, though in the private soil of any person, may be punished by indictment, and removed.” Again ; (page 5,) he says, “Fresh rivers, of what kind soever, do, of common right, belong to the owners of the soil adjacent, so that the owners of one side have, of common right, the propriety of the soil, and, consequently, the right of fishing usque ad filum aqua, and the owners of the other side, the right of soil or ownership and fishing unto the filum aqua on their side ; and, if a man be owner of the land on both sides, in common presumption, he is owner of the whole river, and hath the right of fishing according to the extent of his land in length; with this (he adds) agrees the common experience.” I have extracted fully and freely from this valuable treatise, because it is universally considered as high authority, of itself, and because it defines, with more precision than any other work, what constitutes a public river; and marks the distinction between such as are public and those which are private property. The adjudged cases will, however, bear out all the positions laid down by Lord Hale. In Lord Fitzwalter’s case, (1 Mod. 105.) the question was, whether the defendant had not the right of exclusive fishing in the river of Wall-fleet. Hale, chief justice, ruled, that in the case of a private river, the lord having the soil, is good evidence to prove that he has the right of fishing, and it put the proof on them that claim liberam piscariam; but in case of a river that flows and reflows, and is an arm of the sea, there, prima facie, it is common to all. In the case of Carter v. Murcott, (4 Burr. 2162.) Lord Mansfield held, that the *rules of law were uniform: in rivers not navigable, the proprietors of the land have the right of fishing, on their respective sides, and it generally extended ad filum medium aqua; but in navigable rivers, the proprietors of the land on each side have it *175 not; the fishing is common; it is, prima facie, in the king, and is public. I cannot discover that these principles and distinctions have ever been denied, or overruled; and I ven-lure to say, that they are of indisputable authority. We perceive, then, that some rivers and streams are wholly and absolutely private property, and that others are private property, subject, nevertheless, to the servitude of the public interest, and, in that sense, are to be regarded common highways, by water. The distinguishing test between those rivers which are entirely private property, and those which are private property subject to the public use and enjoyment, consists in the fact, whether they are susceptible, or not, of use as a common passage for the public. In Palmer v. Mulligan, (3 Caines’s Rep. 319.) this distinction was adopted by Chief Justice Kent. No case or dictum has been cited, unless it be those of Stough-ton v. Baker, (4 Tyng, 522.) and Shaw and others v. Crawford, (10 Johns. Rep. 236.) which considers the circumstance, that fish generally, or salmon, (which Lord Hale pronounces not to oe royal fish,) frequent a river at certain seasons, as having any controlling effect on the question, whether the river is to be regarded as private property, or liable to the public servitude; on the contrary, we have seen that this circumstance has no influence on the question. It is evident, on looking into the case of Shaw and Crawford, that the court placed the decision on the fact, that the Bdttenkill had been used, for twenty-six years, for rafting; and we held, that a usage, for such a length of time, would grow into a public right, especially when the public interest was so essentially promoted. The observation, “ that every owner of a mill-dam on a stream which fish from the ocean annually visit, is bound to provide a convenient passage-way for the fish to ascend,” was an obiter dictum, unnecessary to the decision of the cause, and founded entirely on the case of Stoughton v. Baker. In that case, the Supreme Court of Massachusetts #held, that a legislative resolution appointing a committee, who were authorized to require the proprietors of certain dams on Neponset river, to alter them, in such way as should be sufficient for the passage of shad and alewives, at the dams, was a legal proceeding, not repugnant to the constitution. The opinion is founded on the ancient and long continued usage of the general court of Massachusetts, to appoint commissioners to locate and describe the site arid dimensions of passage-ways for fish; and, under the circumstances of the case, it was held, that the right of the proprietor of the dam was subject to the limitation that a reasonable and sufficient passage should be allowed for the fish. The court, however, expressly say, that any prostration of the dam not within the limitation, would be an injury to the owner, for which he might appeal to his country, and have a remedy ; and that if the government, in the grant of a mill privilege, expressly, or by necessary implication, waive this limitation, it would *176 be bound. In the case then under consideration, the court say; ⅛ would be an unreasonable construction of the grant to admit, that by it all the people were deprived of a free fishery m river above the dam, to which, until the grant, they 'were unquestionably entitled. Whether, in that case, the IS < ponset river was navigable above the dam, is no where affirmed or denied; but it is perfectly clear that the court proceeded on local usages and customs, and not upon the general and received doctrines of the common law; for not a single case is referred to, nor is it even asserted, that the principles advanced are sanctioned by the English common law; whereas, it has been shown, that, by the common law, the property in the river Saranac passed to Zephaniah Platt, and has been transmitted, through him, to the defendants, without any limitation or restriction, and that the fishery itself became vested in the proprietor of the river ; it being a conceded fact, that the river is unnavigable for boats of any kind; for there is no weight in the circumstance that., for a few years past, and since 1810, rafts have occasionally been brought down this river, when connected with, the fact that the defendant has received a consideration for that privilege. So far, then, from this being the exercise of a public *right, it is a recognition of the defendant’s property in the river, and fortifies and supports the defendant’s claim to it, as private property. In a case thus circumstanced, the opinion of the court in Stoughton v. Baker would protect the defendant in the exclusive and undisturbed enjoyment of all the rights acquired under the grant, for there is no reservation of the use, by the public, of the river, either for passage or fishing. The reservation of carrying places, upon any water communications within the limits of the grant, was intended to secure to the public port ages, had the river been, in fact, navigable. Upon this subject, the public functionaries appear to have been ignorant; and this reservation was either mere matter of form, or was inserted for greater caution, with an intention to secure the right of having carrying places, if, upon further exploring the country, the river should be found navigable ; but, it being otherwise, the reservation amounts to nothing. Ztpha-niah Platt, then, and his assigns, gained a complete right to the exclusive enjoyment of the river, within the bounds of his patent, and to take the fish frequenting it. He and those holding under him have enjoyed this, right, uninterruptedly, for more than thirty years ; and the indictment charges no other offence than that of obstructing the Saranac, by a dam near its mouth.
The indictment is founded on⅝ and can be supported only by, the force and validity of the two statutes, of the 3d of April, 1801, and of the 5th of April, 1813. The tight of others to take fish in the Saranac, above the defendant’s dam, cannot be a public right; for if the river has been granted, above the dam, to Zephaniah Platt, the.right, to take the fish is a private and individual right; and if it has not been granted, yet the right *177 has not become public, so as to authorize the entry of any one who may see fit to enter, for then the right would belong to the state. There can be no doubt, however, and so it was stated on the argument, that the lands have been granted to the high falls, beyond which salmon never pass. These statutes do not expressly mention, or refer to the Saranac river ; and the general words of the statutes ought to be construed with an implied exception of such rivers as had been fully and absolutely ♦grunted, without any reservation on the part of the state of a right to control the perfect use and enjoyment of the thing granted. The power of regulating and controlling the use of the Saranac, so as to subserve the public interests, would have been impliedly reserved, had that river been navigable ; but, not being so, the legislature have no greater right to pass laws, directing how the waters of that river shall be used, than they would have to regulate the use of the most inconsiderable rivulet, or streams throughout the state, which have been granted by and held from the state. We are compelled, then, by an imperious duty, to examine and decide, whether the acts in question, under the facts in the case, are warranted by the constitution of the United States. I would premise, however, and it is not disrespectful to the legislature to presume the fact, that they were uninformed as to the terms and extent of the grant to Ztphaniah Platt, and of the conditions and reservations in the grant itself; and that they were also uninformed as to the innavi-gability of the Saranac, or else there would have been an express exception of that river. Had the question been propounded to the legislature, whether they intended t.o invade private rights, so far as to compel the proprietors of those valuable and extensive establishments near the mouth of the Sauniac, with their own hands, to destroy their usefulness, by altering their dam so as to deprive them of the use of the water to any beneficial purpose, when these proprietors had acquired, by a grant from the state, and the law of the land, an ample and uncontrollable right to the sole and: uninterrupted use of those waters, it cannot be doubted, from the high and sacred regard to private rights which the legislature have always observed, that they would indignantly have disavowed any such intention.
Upon a question involving a construction of the constitution of the United States, we have had occasion, in the case of Mather and Bush, (16 Johns. Rep. 233.) to express our sense of the paramount and controlling authority, of the decision of the Supreme Court of the United States, upon that clause in the,constitution which declares, that no state shall pass any law impairing the obligation of contracts. On the ^present subject we have the decided opinion of that court, pronounced in a case analogous in principle. In the celebrated case of Fletcher v. Peck, (6 Cranch, 136.) Chief Justice Marshall, in delivering the opinion of the court, held, that a made by *178 the state of Georgia of certain lands, was to be regarded as an executed contract, under the constitutional provision, and that the state of Georgia could not, either by general principles common to our free institutions, or by the provision in the constitution of the United States, pass a law, whereby the estate of those holding under the first grant could be constitutionally and legally impaired, and rendered null and void. The same principle was again maintained, by that court, in the case of the state of New-Jersey v. Wilson, (7 Cranch, 164.) The acts in question do not profess to render the grant to Zephaniah Platt null and void ; but if judgment should pass against the defendant, on the ground that his dam is a public nuisance, it would become the duty of the court to adjudge, that the nuisance be abated ; and thus the grant, under which the defendant holds, would be manifestly impaired, inasmuch as he would be prohibited the use and enjoyment of a valuable and essential part of it. The principle adopted by the Supreme Court of the United States extends as fully to a case whére a materia! and essential part of the grant is impaired, as to a case where it is entirely impaired. The conclusion, then, is irresistible, that the acts in question are unconstitutional and invalid, so far forth as they affect the river Saranac, within the bounds of the patent to Zephaniah Platt.
It is not intended to call in question the power or supremacy of the legislature, to legislate for general and public purposes, promotive of the public good, when acting within the pale of the constitution; nor is the power of taking away private property for public purposes at all denied. Private property may, in many instances, be appropriated to public use; but such appropriations are constitutional, legal, and justifiable, only when a fair and just equivalent is awarded to the owner of property thus taken. In the present case, no equivalent is offered, or provided, for the loss which must-inevitably ensue, upon % compliance with the requirements of the statutes on which the indictment is founded.
I am sensible that the legislature have passed many laws regulating the slope of dams, to facilitate the passage of fish; but what are the particular circumstances of the rivers, in regard to which these laws were enacted, I am uninformed; it may be that they are navigable for boats, and then no objection could lie to such acts. In the present case, the river Sar-anac is not capable of being used as a passage way for boats, or water craft of any kind. It has been granted, and thus has become private property, as high up as salmon ascend. The fishery itself has passed under the grants; the defendants, and those whose estate they have rightfully and legally acquired, erected the dam sought to be altered ; and they have been in the uninterrupted enjoyment of all the rights connected with the dam for more than thirty years. Can it admit of a doubt that the defendants’ rights, growing out of a contract executed *179 by the state, and for which a valuable and competent consideration has been received, will be impaired by the demolition of the dam, or an alteration of it, which might, and probably would, essentially destroy an immense property ?
1 have already said, that the legislature would, no doubt, have excepted the Saranac out of the operation of the statutes, had all the facts been known to them ; yet, as it is included under the general terms and provisions of the acts, I am constrained to say that those acts are inoperative, as regards the defendants, on the ground that they impair the obligation of a contract. In coming to this conclusion, we act conformably to the declared opinion of the highest tribunal under the constitution of the United States, whose decision we are bound to receive, as a correct exposition of that instrument, (a)
Judgment for the defendants.

 Vide Hooker v. Cummings, 20 Johns. Rep. 90.