SEAMAN, executor, &c. *vs.* HICKS and others.

Where an act of the legislature authorized the trustees of Brooklyn to make out and file a permanent plan of the contemplated streets, &c. of that place, which was done accordingly, and the trustees afterwards, under another act authorizing them to open streets, laid out and opened a narrower street through the centre of one of the streets laid down upon the permanent plan, and assessed the land on each side thereof, within the bounds of the old street, for the benefit that the owners of such land would receive by the opening of such new street; *Held*, that the trustees had waived the right, if they ever possessed it, to take the lands thus assessed for the opening of the street, according to the original plan, without paying for

buildings and improvements which had subsequently been erected and made upon the lands thus assessed.

Whether the legislature is authorized to appropriate a piece of land which is only valuable for building purposes, for a street to be opened at some future time, and to be then paid for at the mere value of the land, and without compensating the owner for buildings erected thereon after such appropriation but before the land is taken and paid for·as a street, *Quære ?*

Where land is sold by a master, under a decree of the court of chancery, the court will not compel the purchaser to complete his purchase when he will not obtain such an interest in the premises, and in the buildings thereon, as he had a right to suppose, from the terms of the sale, he was buying when the property was struck off to him on his bid.

And where a master sells property, with buildings thereon, as and for a good title, if the corporation of the city or village in which the premises are situated has a right to take the land for a street at some future time without paying for the buildings, of which fact the purchaser was ignorant at the time of the sale, the court will not compel him to complete his purchase ; although the probability of the exercise of such right, by the corporation, is very remote.

March 2.  THIS case came before the court upon an appeal by J. H. Titus, from two orders of the vice chancellor of the first circuit ; the one denying the appellant's application to be discharged from his purchase of a lot in the city of Brooklyn, made at a master's sale under the decree in this cause, and the other directing him to pay the balance of the purchase money, and complete his purchase.   The premises in question consisted of a tract of land which was nearly covered with buildings, bounded one hundred and six feet on Everett-street, and ninety-two feet and eight inches on Fulton-street.   And the objection made to the title was, that a part of the premises, on the westerly side of Everett-street, and about twenty-feet wide on Fulton-street, might be taken for the opening of Columbia-street, if that street should ever be opened in comformity to a map or plan of the village of Brooklyn, approved by the trustees, and filed with the clerk of the corporation in April, 1819; pursuant to the provisions of the last section of the act of 1816, incorporating that village.   The purchaser, in his petition to be relieved from his purchase, stated that shortly after the sale he discovered, for the first time, that the lines of Columbia-street, as the same were laid down upon the map of April, 1819, would include a part of the

1841.

Seaman
v.
Hicks.

premises, and that the opening of Columbia-street according to that map, would take nearly the whole of one of the brick stores fronting on Fulton-street, and a large portion of the brick stable in the rear of that store, on Everett-street. He further stated that the store and stable were erected on the premises long subsequent to the filing of the village map ; that many of the landholders in Brooklyn already contemplated the opening of Columbia-street, agreeably to the map, and that he believed it would ultimately be carried into effect ; that the advocates of that measure claimed that the buildings which had been thus erected subsequent to the filing of the map, might be legally taken for the purpose of opening the street, without allowing the owner thereof any thing for the damage to the buildings ; and that he was advised by his counsel and believed that the completion of his purchase would probably involve him in a protracted and expensive litigation at some future day. On the part of the persons interested in the sale of the property, various affidavits, maps, diagrams, &c. were exhibited, to show that by the permanent grade adopted for Columbia-street, when it was opened upon Brooklyn Heights, and for the several streets crossing the same, which grade had been materially altered since the filing of the map and grades of the city under the act of April, 1816, it would be impracticable to carry out the original plan of opening and continuing that street, down the hill, northwardly from Poplar-street to Fulton-street. And the proceedings of the corporation in 1824, for the opening of Everett-street from Doughty-street to Fulton, were also produced. By those proceedings, it appeared that this part of what was originally contained within the lines of Columbia-street, as laid down on the map of April, 1819, had been subsequently opened as a street of less width, leaving a portion of what was included in those lines upon each side of the new street as thus opened ; which lands on each side of Everett-street were assessed for the benefits which the owners thereof would receive by the opening of the street of that width.

1841.

Seaman
v.
Hicks.

*Clarence D. Sackett,* for the appellant.

*J. Dikeman & J. Maurice,* for the respondents.

THE CHANCELLOR. The terms of sale show that the land was sold as and for a good title, except as to the incumbrance therein mentioned. The court therefore ought not to compel the purchaser to complete his purchase unless he would have obtained, under the master's deed, such an interest both in the land and in the buildings thereon, as he was authorized to suppose he was buying when the property was struck down to him upon his bid. And if the corporation of Brooklyn has a legal and constitutional right hereafter to take that part of the premises which was included within the original lines of Columbia-street, as laid down upon the map of April, 1819, without compensating the owner for the destruction of the buildings thereon, the appellant's application to be discharged from his purchase should have been granted. The existence of such a right in the corporation would be a substantial injury to the value of urban property situated as this was, and actually covered with valuable buildings ; although the probility that the right would ever be enforced, by an extension of Columbia-street according to the original plan of that part of the city, was very remote.

In the ordinary case of a base fee, determinable only upon the contingency of a single gentleman, far advanced in life, afterwards marrying and having issue, most persons might consider the happening of the event which was to divest the estate so improbable as to render such determinable fee substantially the same as an absolute indefeasible estate of inheritance in fee simple. For it might be considered as wholly improbable that a bachelor of seventy, who in the prime of life had so far disregarded the teachings of wisdom as well as of nature as to continue in a state of celibacy, would at that advanced age not only be guilty of the extreme folly of contracting matrimony for the first time, but would also procreate heirs, to divest the

1841.

Seaman
v.
Hicks.

estate determinable upon that event. But certainly no lawyer could for a moment suppose that a vendee, who had contracted for a good title, was bound to accept of an estate which depended upon a contingency of that nature; unless the fact was satisfactorily established that it was physically impossible that the event which was to determine the estate should ever happen. So in the case under consideration, although it is highly improbable that it can ever be for the interest of the city to make such a change in the present grade of the streets upon Brooklyn Heights as to render it practicable and expedient to continue Columbia-street northwardly from Poplar-street to the premises in question, according to the original plan of the trustees of the village as delineated on their map, experience has so often shown that public bodies as well as individuals may depart from the path of true wisdom as to render it improper for the court, in such a case, to speculate upon the probability or improbability that the corporation of the city of Brooklyn may be induced to do it, at some future time, in relation to this extension of Columbia-street. It becomes absolutely necessary, therefore, that I should examine the question as to the existence of the supposed right of that corporation to take a part of the premises in question, for such an extension of Columbia-street, without paying to the owner of the land the damages which he will sustain by the destruction of buildings which shall have been erected thereon subsequent to the filing of the map of April, 1819.

In the case of the opening of *Furman-street*, (17 *Wend. Rep.* 649,) Mr. Justice Bronson came to the conclusion that the 18th section of the act of April, 1816, (*Laws of N. Y. sess.* 39*th, ch.* 95,) by necessary implication, deprived the owner of property, designated upon the permanent plan of the village as the intended site of a future street, of all claim to compensation for the removal or destruction of buildings which should be erected thereon subsequent to the filing of the map which the trustees were directed to make. Such may have been the intention of the

legislature in relation to property which was so situated that the prospect of the opening of streets through the same, at some future time, and the immediate location of such streets according to a settled plan, would be of more actual benefit, to the owner of the residue of such land, than the present use of the part of the land thus appropriated for future streets would be worth for building purposes, or other permanent improvements; until it should become necessary to open the streets and pay the owner for the value of the land actually taken, without reference to such improvements. I think, however, the position cannot be maintained, that where an individual has a single vacant lot, in a city or village, which lot is of great value for building purposes and worth little or nothing for any other use, the legislature may authorize the corporation to appropriate such lot prospectively, to be opened and used as a street at its unimproved value, and to be paid for at some future period when the corporation shall think proper to order such street to be opened; thereby depriving the owner of the whole beneficial use of his lot, for an indefinite time, without any equivalent whatever for the damage he must sustain in consequence of being deprived of the power of building upon or otherwise improving the lot.

The papers before me on this appeal do not, however, show what was the situation of the lands between Doughty and Fulton-streets, at the time of the filing of the map of 1819, or whether the owner of the lands then included within the lines of Columbia-street as delineated on the map, was the owner of any other lands which might be greatly enhanced in value by this prospective location of the streets of the village. And as my decision in this case depends upon another, or rather a different question, it is not necessary that I should express any definitive opinion as to what would have been the rights of the corporation, as to the opening that part of Columbia-street without paying for buildings which had been erected upon the lands taken, if Everett-street had not been opened under the act of 1824.

But taking it for granted that the decision of the supreme court in the case of Furman-street was right, and that the same principle was originally applicable to the lands included within the lines of this part of Columbia-street, as laid down upon the trustees' map, I think the act of April, 1824, (*Laws of N. Y.* 1824, *p.* 5, § 5,) and the laying out of Everett-street upon a part of the same land which was designated on the map as the location of Columbia-street, and the assessment of the residue of that land for the benefit which the owner thereof was to receive from this substituted street, was a complete abandonment of any right which the corporation previously had, to take the whole of that land for a future street without paying for any buildings which might be erected thereon subsequent to the filing of the map in 1819. The act of 1824 did not require the trustees, in the laying out of new streets, to confine themselves to the permanent plan adopted in the act of 1816 ; nor to make the streets of the same width as those which were laid down upon their map ; although it was unquestionably supposed by the legislature, and by the inhabitants who procured the passage of the act of 1824, that in laying out and opening new streets, the map and plan of the city would be adhered to except in cases where some good reason was found to exist for departing therefrom. I think, then, it may be fairly presumed from the facts before me, that at the time of the application for the opening of Everett-street, in the fall of 1824, it had been discoverd that the grade of the streets upon Brooklyn Heights would be such as to render it wholly inexpedient, if not practically impossible, to carry out the original plan of extending Columbia-street any further north than Poplar-street, on the brow of the hill. And that the trustees finding that a narrower street would be equally beneficial to the village, and to the owners of property who were to be benefitted by the opening of the street from Doughty to Fulton, abandoned the original plan to this extent, and laid out this new street as a substitute. When, therefore, this new street was laid out of this width, no one in his

senses could for a moment have supposed that the trustees of the corporation intended to reserve the right of pulling down any buildings which might be erected on the line thereof, without compensating the owners for their damages, if it should afterwards be deemed expedient to widen that street to the original lines of Columbia-street as laid down upon the map. The effect of such a reservation would indeed have been entirely destructive of the rights of the owners of property adjoining the new street. For, as at that time it could not have been used to any advantage whatever except for building purposes, if they could not build upon it without subjecting themselves to the risk of having their buildings destroyed without compensation whenever the corporation should think proper to widen the street, no valuable improvements would be made on either side of Everett-street. I am satisfied, therefore, that at the time of the master's sale, no right to take the strip in question, on the west side of Everett-street, without paying for the buildings as well as the land, existed in the corporation of Brooklyn ; and that the purchaser would have obtained, under the master's deed, the same beneficial interest in the property which he expected to purchase when he made his bid.

The orders appealed from must, therefore, be affirmed with costs. And the appellant must pay the interest on the purchase money, as the damages which the respondents have sustained by the delay and vexation caused by these appeals. The proceedings are to be remitted to the vice chancellor ; to the end that he may cause the orders appealed from, as well as this decree of affirmance, to be carried into effect.

---

ERRATUM.

At page 525, lines 13 and 14 from bottom, for "authorizes a will *personally* executed out of the state," READ "authorizes a will *of personal property* executed out of the state," &c.