HENRY A. MOTT et al., Executors, etc., Respondents, *v.* THADDEUS P. MOTT et al., FREDERICK H. COSSETT et al., Purchasers, etc., Appellants.

The question whether, where lands are granted bounded upon a highway or stream not navigable, the title passes to the center of the highway or stream, is one of intent, and while the presumption is of an intent to pass the title — which will prevail unless by the terms of the grant or by necessary implication the highway or stream is excluded — yet the intent is to be gathered from the description of the premises in connection with the other parts of the grant, and by reference to the situation of the lands and the condition and relation of the parties to the lands conveyed and to other lands in the vicinity; and, if an intent to exclude

Statement of case.

the highway or stream appears from the terms of the grant, as inter-
preted and illustrated by the surrounding circumstances, the title does
not pass.

As to whether a purchaser at a judicial sale will be compelled to take a
title depending upon adverse possession and parol proof to support it,
*quære.*

Where a tract of land, divided into city lots, is put up and sold in separate
and independent parcels, a defect in the title to one parcel or to a lot
included therein, will not avoid or affect the sale of another parcel;
but a defect in the title to any one of several lots put up and sold
as one parcel, avoids the sale of the whole parcel.

*It seems* that the effect of a conveyance of lands bounded by a private
lane running through the lands of the grantor, where the lane has no
connection with the lands granted and its use is not necessary to the
full enjoyment thereof, is not the same as where the lands are bounded
by a highway; the same presumption of intent to convey the fee to the
center of the lane does not attach.

The owners of certain agricultural lands, across a portion of which was
a private lane leading from a highway to a dwelling-house thereon, con-
veyed to V. a portion of the lands adjacent to, and south of, the lane.
The deed bounded the premises conveyed by courses and distances,
which did not include the lane, nor was it required to give the quantity
of land conveyed. The lines ran " to the side of " the lane and "along the
same." The deed also granted the privilege of using, from time to time
and at all times forever hereafter, the said lane, the grantee " bearing and
paying in common with the grantors   *   *   *   his proportionate part
of keeping the said lane in repair." The grantors subsequently con-
veyed the land north of the lane. They retained a portion of their
land to which the lane gave access, and the use of it was continued for
over thirty years, when the lands were divided into city lots and streets,
and the necessity for the use of the lane ceased. The lane was never
necessary to the convenient occupation of either of the parcels of
land granted. M. subsequently acquired title to all the lands adjoin-
ing the lane on both sides thereof, and, upon judicial sale, they were
put up in parcels, in some of which the lane was included. The sales
were of the fee. Upon appeal from orders requiring the purchasers
to complete their purchases, *held*, that the grant of the easement in
the lane, in the light of the surrounding circumstances, showed an
intent to limit the fee granted to the land outside the lane; that the fee
of the lane remained in the grantees, subject to the easement; and that
the sales of the parcels which included portions of the lane were
invalid because of the defect in title.

*Mott* v. *Mott* (8 Hun, 474) reversed.

The lands of M. adjoined "the Bloomingdale road" on the west. The
sale was made after the passage of the act of 1867 (chap. 697, Laws of
1867) closing the Bloomingdale road, and in terms vesting the title of

the fee of the road to the center thereof in the owners in fee of the adjoining lands. After the passage of said act, M. entered upon, and took possession of the westerly half of the road adjoining his premises. Two lots were sold separately, which were described " as forming the westerly half of the Bloomingdale road, then closed." The sale was " of the estate, right, title and interest" of M., therein. *Held*, that whether the title to said lots was valid or not, was immaterial upon this appeal, as the purchaser, by a deed " of the right, title and interest" of M., would get precisely what was offered, and all that was offered to be sold; and that the purchaser was properly required to complete his purchase.

(Argued January 16, 1877; decided January 23, 1877.)

THESE are appeals on the part of Frederick H. Cossett and Nathan D. Higgins, purchasers, from orders of the General Term of the Supreme Court in the first judicial department affirming orders of Special Term requiring said purchasers to complete their purchases.

The facts appear sufficiently in the opinion.

*Charles Jones* for the appellants. Plaintiffs' testator never acquired title to lot No. 13. (*Jackson* v. *Hathaway*, 15 J. R., 447; *Child* v. *Starr*, 4 Hill, 369; *Jones* v. *Cowman*, 2 Sand., 234; *Van Amringe* v. *Barratt*, 8 Bosw., 357; *Seaman* v. *Hicks*, 8 Paige, 655; *Fearing* v. *Irving*, 55 N. Y., 486.) No part of the land in the lane was conveyed to him. (*Codman* v. *Evans*, 1 Al., 423; *Jones* v. *Coman*, 2 Sand., 234, 238, 239.) The claim of adverse possession set up by the executors is untenable. (*Jackson* v. *Cairns*, 20 J. R., 301.) Where a party contracts for an entirety of an estate, he will not be compelled to take a part only. (Story's Eq., 778; *Gilbert* v. *Peteler*, 38 Barb., 488; 38 N. Y., 165; *Dykes* v. *Blake*, 4 Bing. [N. C.], 463.) A court of equity will not compel a purchaser to accept a title unless the vendor can show it is free from all doubt, either as matter of fact or of law. (Atk. on Tit., 2, 369; *Lowe* v. *Lust*, 14 Ves., 548; *Franklin* v. *Ld. Bromson*, id., 555; *Bklyn. Pk. Comrs.* v. *Armstrong*, 45 N. Y., 234.)

*Clifford A. Hand* and *Samuel Hand* for the respondent. An objection valid as to the title of one lot could not be urged

as fatal to all. (*King* v. *Badeau*, 6 J. Ch., 38; Hil. on Vendors, 67.) The right or easement was extinguished by the sale of the lane divided into city lots. (*Corning* v. *Gould*, 16 Wend., 539; *Pope* v. *O'Hara*, 48 N. Y., 446.) Dr. Mott's title to the fee of the lane was not defective. (*Jackson* v. *Vermilyea*, 6 Cow., 680; *Jackson* v. *Elston*, 12 J. R., 454; *Winter* v. *Peterson*, 4 Zab. [N. J.], 527; *Fleming* v. *Griswold*, 1 Hill, 85; *Seneca Nation* v. *Knight*, 23 N. Y., 498; *Herring* v. *Fisher*, 1 Sand., 348; *Hammond* v. *McLaughlin*, id., 341; *Child* v. *Starr*, 4 Hill, 375; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y., 61; *Perrin* v. *N. Y. C. R. R. Co.*, 36 id., 120; *Lozier* v. *N. Y. C. R. R. Co.*, 42 Barb., 365; 3 Kent's Com. [7th ed.], 257; *Cox* v. *Freedley*, 33 Penn., 124; *Paul* v. *Carver*, 26 id., 244; *Champlin* v. *Pendleton*, 13 Conn., 27.)

ALLEN, J. The appellants, Cossett and Higgins, were severally, and not jointly, the purchasers of several lots of ground in the city of New York, at a sale by auction under the decree of the court, of a portion of the real estate of which Valentine Mott, the testator of the respondents, died seized. Each refused to complete his purchase and accept the title offered, and applied to the court to be relieved from their contracts, and for a return of the moneys paid at the time of the sale. The plaintiffs and respondents made cross applications to compel them to accept the title and pay the purchase-money. The Supreme Court denied the applications of the appellants, and granted those of the respondents, and the purchasers bring their appeals to this court.

The objections to the title, except as to two lots formerly a part of the old Bloomingdale road, bought by Cossett, are common to both appellants. The lots last named were purchased separate from all the other lots bought by Cossett, and while a title in fee to the other parcels was put up and sold, the vendors in express terms offered for sale these lots "as forming the westerly half of the Bloomingdale road, then closed," and "the estate, right, title, and interest of the testator therein." This was stated and understood by Cossett at

the time of his purchase. The road had been closed pursuant to chapter 697, of the Laws of 1867, and the statute assumed to, and in terms did, vest the title to the fee of the road to the center in the owners in fee of the adjoining lands. The testator was the owner of the lands abutting on the west side of the road, and entered upon and took possession of the portion sold to the appellant Cossett, and his executors were in possession up to the time of the sale.

It does not appear that the title has been questioned, or that any adverse claim has been made to the lots. The title is apparently good and indefeasible, but whether it is or not is not material upon this appeal. The purchaser Cossett will, under the deed to which he will be entitled, get precisely all that was offered to be sold, and for which he bid, and which he agreed to purchase, viz., all the estate, right, title and interest of Dr. Mott, the testator, to the lots named. The purchaser took the risk of the title, and was not misled or deceived in respect to it, but with full knowledge of the public statute under which the vendors made title, and of every circumstance affecting the title, entered into the contract of purchase, and cannot, upon any fact disclosed in the papers before us, be relieved from his undertaking. There was neither fraud, warranty or mistake in the sale or purchase, and he should perform the contract on his part.

A more serious question is presented in respect to lots 6, 7, 8 and 9, bought by Cossett in one parcel, and all the lots sold to Higgins except lots 48 and 49. The lots, the title to which is disputed, are either wholly or in part within the exterior lines of a lane twenty feet in width, leading from the old Bloomingdale road west in the direction of the Hudson river, or were sold in the same parcel with lots partially or wholly within the boundaries of such lane. It is conceded that if the title to any part of the lands which were put up and sold as one parcel, although consisting of several distinct lots, is defective, the purchaser is not bound to accept and pay for any one of the lots included in the one sale. This necessarily follows from the fact that the lots were put up and

bought together, and the purchaser is entitled to his whole purchase. He cannot be compelled to take a conveyance of the lots to which a good title can be made, if the title of any embraced in the same purchase is defective. *Non constat* that he would have bought any if he could not have all, or that he would have given the same proportionate price for a part of the lots that he would pay for all. The contract for each parcel was an entirety, and if the plaintiffs and respondents cannot perform specifically *in toto*, they cannot compel a performance in part. The title to all the lands came by several mesne conveyances from the heirs at law of Charles W. Apthorpe, who died in 1797. The title of Dr. Mott is made through two deeds from the heirs, the one of lands north of the lane to David M. Clarkson, bearing date October 15, 1799, and the other of lands south of the lane to Oliver Vanderbilt, bearing date February 28, 1800, and if by these deeds a title to the land within the boundary lines of the lane did not pass to the grantees respectively, each taking to the center of the lane, the vendors had no title to the fee unless a title had been acquired by adverse possession, which is not shown. If the grantees under those deeds took merely an easement in the lane as a private way of which they had the user in common with their grantors and their heirs and assigns, the objection to the title to the parcels affected by it must be sustained.

The lands were at the time of these conveyances suburban lands, and used for agricultural purposes. The Bloomingdale road from which the lane started was on the east of the lands, and the lane gave access to lands of the grantors between the parcels granted and the Hudson river, and perhaps extended, either directly or by uniting with other lanes or private roads, to the river on the west. The lands of the grantors were bounded on the west by the river, and the grants to Clarkson and Vanderbilt only conveyed a portion of the same on the east and adjoining the Bloomingdale road. The family dwelling was between the portions conveyed and the river, and one means of access to

it, and other parts of the grantors' lands not sold, was through the lane before mentioned. The lane was in existence and in use at the time of the conveyances, and continued to be used until Dr. Mott acquired the title to the lands embraced in the conveyances in 1833 and 1834, and since that time it has been closed by a gate, but was for a time used more or less as a lane and a road or highway, but not by the public. The lane has ceased to be used as such, and Dr. Mott, in his lifetime, to some extent, used the land for other purposes, and the necessity for its continuance as a lane no longer exists. The opening of the streets and avenues of the city in the vicinity, and through the premises conveyed to Clarkson and Vanderbilt as well as the other lands owned by the grantors, as a means of access to which the lane was a convenience, if not a necessity, has removed all occasion for it, and as said by the learned counsel for the respondents, it "has ceased to have any attribute of a way or private road."

Whether, notwithstanding this fact, the title to the fee of the land passed to the parties Clarkson and Vanderbilt, depends upon the true interpretation of the grants to them, for unless it did so pass the vendors have nothing but a possession with the legal title to an easement in *loco*.

The lane is not included within the boundaries, that is, the measurement by courses and distances given in the deeds, and if it passed at all, it so passed because of the intent of the grantors as expressed by the terms of the deed, read as a whole, to convey the same.. When lands are granted bounded upon a highway or a stream not navigable, unless by the terms of the grant, or by necessary implication, the highway or the bed of the stream are excluded, a title will pass to the center of the highway or stream. The reason is obvious. Ordinarily, in a conveyance of that kind, there is no purpose to be served in the retention by the grantor of a narrow strip of land along the boundaries of the land conveyed, and between it and the lands of other proprietors, or in the bed of a stream, and the intent to grant them will, therefore, be presumed by a conveyance of the adjacent lands bounded " by,"

or "upon," or "along," such highway or stream, or other equivalent phrases. It depends upon the intent of the parties to be gathered from the description of the premises read in connection with the other parts of the deed, and by reference to the situation of the lands and the condition and relation of the parties to those and other lands in the vicinity, whether the grant extends to the center of the road or stream. This is the recognized rule of interpretation, and it is a question of interpretation and intent. (*Jackson* v. *Hathaway*, 15 J. R., 447; *Seneca Indians* v. *Knight*, 23 N. Y., 498; *Luce* v. *Carley*, 24 W. R., 451, *Child* v. *Starr*, 4 Hill, 369; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y., 61.) An intent to exclude the highway or bed of the stream will not be presumed, but must appear from the terms of the deed as interpreted and illustrated by surrounding circumstances. The lane as a lane was not necessary to the convenient occupation of either of the parcels of land granted to Clarkson and Vanderbilt, or to give the quantity of land conveyed to either. The grant to the former was of ten acres fronting on the Bloomingdale road, and not requiring the lane as an outlet, and it does not appear that it was required as a way to the Hudson river at that point, or for any purpose connected with the full enjoyment of the land sold. The other grant was of nineteen acres extending from the Bloomingdale road to the river with a private road to the river, of which the grantees had the use, on the south side of the lands granted. There was a dwelling-house still owned by the grantors, between the Clarkson grant and the river, and this lane was a way of access to it, and might be convenient if not necessary as a way of access from the Bloomingdale road to the other lands of the grantors, and which they might desire to subdivide and sell. There was a reason, therefore, why the grantors might desire to reserve the lane, while the grantees had no perceptible interest in keeping it up as a lane or passageway, and the deeds must be interpreted with the position and intent of the parties in view. We come, then, to the descriptive parts of the deeds. That to Mr. Clarkson conveys the

premises by actual measurement and by courses and distances, commencing on the north side of the Bloomingdale road, and the second course of nine chains seventy-five links is "to the side of a lane twenty feet wide, and thence along the same, south fifty-eight degrees, east ten chains sixty links, to the Bloomingdale road," etc., containing ten acres, according to a map annexed. A copy of the map is not furnished, but if it be conceded that neither the lines of the map, or the area embraced within the boundaries would include the lane, if the same rule is to apply to a private lane of this character as to a public highway within the well-settled rules of interpretation, the land might pass to the center, if not controlled or affected by other parts of the same instrument. As the land within the lines of the lane would only pass by reason of the presumed intent of the parties, the presumption may be overthrown by other clauses inconsistent with, and repugnant to, such intent. · There is also granted by the same deed to the grantee "the privilege of using from time to time, and at all times forever hereafter, with servants, laborers, horses, etc., as well the said lane leading to Strikers, as the lane twenty feet wide in the said map particularly delineated, the said party of the second part, etc., always bearing and paying in common with the grantors, their heirs and assigns, his or their proportionate part of the expense of keeping the said lane in repair," etc.

The grantors do not reserve the use of the lane as would be proper had the fee of it been granted, but grant the use, as the owner of the fee might well do, thus, in terms, granting two things, the fee of the land on the north side of the lane and an easement in the lane itself. The boundary along the Striker lane, on the north or first course of the boundary, is the same as in the twenty-feet lane in question on the south, but we do not learn that it has been sought to extend the grant so as to include any part of that lane. The boundary upon each, and the grant of the use of each, is the same in all respects. This grant, when read in the light of the circumstances of the parties and the locality, goes far to

control and limit the effect which but for it might be be given to the description of the land granted. Standing as it does in juxtaposition with the description of the land, and following it, and purporting to describe a separate and distinct right granted, to the passing of which the clause was thought necessary, it is a part of the description of the whole premises, and all the rights granted, and avows the intent to be in accordance with the words of the grant, viz.: To grant the land described, and an easement in lands outside of the actual boundaries.

The true meaning of the description, therefore, is, that the line brought to the "side of the lane," and made to run "thence along the same," was intended to run along the side "of the lane," and the word "same," as used, means, not "the lane," but the "side of the lane" particularly mentioned.

The deed to Vanderbilt, under which a title to the south half of the lane is claimed, is still more indicative of an intent to exclude the lane from the lands granted. The boundary line on the Bloomingdale road, although the course and distance of the line is given, is described as along the "west side of Bloomingdale road," which might carry the conveyance to the center line, but when that line is brought by measurement "to a lane on the south side of Mr. Clarkson's land" (the lane in question), the description carries it not in terms along the lane or the side of the lane, but "thence north fifty-five degrees, west twenty-three chains forty links to Hudson river aforesaid," and the whole description closes with stating the quantity of land included within the boundaries, "according to a map" annexed to the deed. The boundary lines, by the map, exclude the lane, although the north boundary line of the granted premises, as given in the descriptive part of the deed, and as laid down on the map, is coincident with the south line of the lane. This deed does not grant with the lands a right to use the lane, but does grant the right to use a private road on the south side of the granted lands from the Bloomingdale road to the wharf on

the river, and the privilege of using the wharf. It does not appear that any claim was ever made to any part of the lane, or a right to use the same, by the grantees under the deed or their successors in interest, unless Dr. Mott's possession and user may be regarded as such. The use of the lane remained in the heirs of Apthorpe, and those entitled under the deed to Clarkson.

Those taking under the Vanderbilt deed had no occasion, so far as appears, to use the lane, and could not have closed it by an entry upon, and taking possession of, the south half of it, and notwithstanding the grantors reserved no right in the lane, it is very evident they parted with no interest in it, and had the use of it.

The subsequent conveyances by and through which the title to the premises conveyed to Clarkson and Vanderbilt became vested in Dr. Mott, need not be especially considered, as they could not act retroactively and add to, or vary the effect of, the deeds mentioned. They differ from the deeds to Clarkson and Vanderbilt, and from each other in the description as well as other parts, and the condition of the lands and the relation of the parties to the lands conveyed and in the immediate neighborhood, may have been very different than in 1799 and 1800, when the first deeds were given. It might have been important to determine what apparently passed under them to Dr. Mott, had the evidence in the case presented the question of adverse possession. But as the evidence did not show an adverse possession for a sufficient length of time under claim of title to bar the real owner, we are not called upon to pass upon those deeds and mesne conveyances.

If this lane had been a public highway, the Vanderbilt deed would not have included any part of it within the case of *Jackson* v. *Hathaway* (15 J. R., 447), which has never been questioned as authority, and as the respondents must make title under that deed to the south half of the lane, the title is to that extent defective. The boundary in the case quoted began at a stake by the side of the road, and ran thence by specified courses and distances, which did not include the road,

but did give the quantity of land called for. The Vanderbilt deed conveyed the land bounded by lines, the courses and distances of which are given, and which embrace the area called for, and which bring the plot to the south line of the lane, but do not include any part of it, and that line is as distinct a monument as was the stake in the case quoted.

The original owners had a valid and very obvious reason for retaining the ownership and control of the lane, and the intent to do so and exclude the same from the grants under which the executors of Dr. Mott claim title, is very manifest, not only by the descriptive terms, but other parts of the deeds, and the circumstances under which the deeds were made. The case has been treated as if the boundary upon a lane of this character running through the lands of the grantor, and upon one side of the granted premises was to be treated as a highway when constituting a boundary line. But it is not conceded that the effect of a conveyance of lands bounded by such a lane, when the lane has no connection with the granted lands, and its use is not necessary to the full enjoyment of the same, is in all cases the same as when lands are bounded by a public highway. *Codman* v. *Evans* (1 Allen, 443) and *Jones* v. *Cowman* (2 Sandf. S. C. R., 234) are very much in point and adverse to the claim of the respondents. In the first case named the land was conveyed, bounded southerly on a passageway lying between the land granted and the house of the grantor, and the grant was described by measurements which did not include the passageway, and the privilege of using the passageway was conferred by the deed upon the grantee, and reference was made to a plot or map of the granted premises which did not include the passage, and it was held that the grantee took only an easement in, and did not acquire title to, any part of the way. In all its controlling features the deed was quite like the deed to Vanderbilt, and not unlike that to Clarkson. In the case reported by Mr. Sandford (*supra*), the premises as here were bounded by exact measurement, and two sides by two several streets and southerly by the northerly line or side

of T. B.'s lane, and further described as lot 21 on a map referred to, and it was held that the grant did not convey to the center of the lane. The title to the lane remains in the heirs of Apthorpe or their assigns, and is not upon the evidence or the facts reported by the referee in the executors of Dr. Mott, the present vendors.

It is of no practical value to the owners, whoever they may be, for the owners of the adjacent lands on the north, and possibly on the south or west, or both, are entitled to have it kept open as a lane, and kept in repair by the ratable contributions of the owners of the tract, and it is not at all probable that the present occupants will ever be disturbed in their possession and use of the land, but the fact remains that the title is not perfect, and may not be marketable, and is not, therefore, such a title as a purchaser at a judicial sale can be compelled to take. (*Seaman* v. *Hicks*, 8 Paige, 655.)

Had Dr. Mott owned the fee of the land with the exclusive right to use the same and also the lands upon each side of it, the unity of title would have operated to merge the easement, and his title would have been perfect. (*Corning* v. *Gould*, 16 Wend., 539; *Pope* v. *O'Hara*, 48 N. Y., 446.) As he did not own the fee of the lane, there has been no merger, and his possession was not of such a character, or under circumstances to give him a title by prescription, even if a purchaser could be compelled to take a title depending upon adverse possession and parol proof to support it, unless in a case beyond all reasonable doubt. But this defect only applies to certain parcels of the lands bought by these appellants respectively. The lots were put up in several parcels, and each parcel was sold and bought independent of every other parcel. The value of any one parcel either for occupation or sale did not depend, and was not affected by the fact that the purchaser did or did not acquire a title to any other lot or parcel. Each lot was intended for use and enjoyment separate from, and independent of, every other lot, and the possession of one was not necessary to the profitable enjoyment of any other. When several lots were put up as

one parcel, and bid in or taken together, a defect in the title to any one of the lots as before suggested will avoid the sale of all. In such case the sale was of all as an entirety, and as the vendee cannot perform as to all, the sale necessarily falls through. These considerations lead to a modification of the order of the Supreme Court, and the appellant Cossett must be released from his purchase of lots 6, 7, 8 and 9, and must perform the contracts and accept a conveyance, and pay the purchase price of lots 4, 5, 10, 11, 12 and 13, and the appellant Higgins must be released from his purchase of lots 19, 20, 21, 22, 35, 36, 37, 38 and 39, and must perform his contract, and accept a conveyance, and pay the purchase-price of lots 48 and 49.

The order should be modified accordingly, and as modified affirmed, without costs to either party as against the other in this court.

All concur.

Ordered accordingly.