SHANDALEE CAMP, INC., Plaintiff, *v*. IKE ROSENTHAL and Others, Defendants.

Supreme Court, Sullivan County, January 18, 1929.

*Williams & Foster*, for the plaintiff.

*Eugene H. Bouton* [*Ellsworth Baker* of counsel], for the defendants.

RUSSELL, J. This is an action for an injunction restraining the defendants from continuing trespasses upon a portion of a pond or lake known as Shandalee lake, situated in the town of Rockland, Sullivan county. The defendants ask for similar relief against the plaintiff in relation to portions of said pond or lake which defendants claim belong to them. It was stipulated and conceded at the trial that plaintiff and defendants were entitled to injunctive relief, and that the only question to be determined is the boundary lines of the respective properties in respect to the lands comprising the lake.

This lake has been used by the guests of the plaintiff and of the defendants, who are engaged in the boarding house business. Each party claims that the promiscuous use of the lake by the guests of the other owner, or owners, interferes with his rights in the lake of boating, fishing and bathing.

Shandalee lake is located in the westerly half of division 4 of the 5th allotment of great lot No. 3 of the Hardenburgh Patent in Sullivan county. The westerly half of great lot No. 3 consists of lots Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10. The boundary lines of these lots are fixed by the conveyances without respect to the shore line or the center of Shandalee lake. The boundary lines are determined by courses and distances which, when plotted out, include lands under the water of the lake.

Plaintiff claims that that portion of the lake included within the boundary lines of his property belongs to him, and that that

portion of the lake included within the boundary lines of the defendants' property belongs to them. The defendants claim, however, that the plaintiff and the defendants and others owning property abutting upon the lake own to the center of the lake irrespective of their boundary lines.

It appears that in 1860 Theodoric R. Westbrook and Sarah Westbrook owned lots 1 to 10. These parties are the common source of title. In 1860 Theodoric R. Westbrook and wife and Sarah Westbrook conveyed to Henry Fries and Philip Weyrauch lots Nos. 1, 2, 3, 4, 5, 6, 7, 8 and 10. These parties conveyed lot No. 9 to Charles Ruh. In 1861 Henry Fries, Charles Ruh, Adam Lohman and John Hollup entered into an agreement with Philip Weyrauch and Martin Leis, giving the right to the said Philip Weyrauch and Martin Leis to dam up and use the waters of Shandalee lake, and to raise the water of the lake not to exceed one foot from its then natural surface. These parties were also given the right to drain off the water of the pond any depth below the natural surface.

The lands comprised in these lots have been conveyed from time to time until the plaintiff acquired a part of lots 7 and 8. A portion of Shandalee lake is included within the boundary lines of the premises owned by the plaintiff. The defendants acquired lot No. 5. A very small portion of the lake is included within the boundary lines of lot No. 5.

As was stated above, neither the lands of the plaintiff nor the lands of the defendants are bounded by the lake or the shore of the lake. The lot lines are determined by courses and distances irrespective of the existence of the lake, so that the lots run out into the lake.

The defendants contend that the plaintiff owns only to the center of the lake and that the defendants own to the center of the lake opposite their respective properties, although, according to the lot lines, plaintiff would own beyond the center and the defendants less than to the center. This contention is based upon the defendants' construction of the conveyances and also upon the rule that owners having properties abutting upon a fresh water lake subject to private ownership, own to the center of the lake. In relation to the first contention of the defendants, their specific claim is that the agreement between the common owners in relation to the damming of the waters and the right to raise the height of the pond one foot had the effect of reducing the rights in the lake to common ownership. Assuming that the agreement in relation to this matter is still in existence and is binding upon the owners of the lots in question, it would have no such effect as claimed by the

defendants. The effect of this agreement is to create an easement in the use of the waters of this lake for the purposes mentioned in the agreement. Otherwise, the owners of the lake continue their ownership as before, subject only to the flowage rights covered by the agreement.

The other contention of the defendants is that in the case of a fresh water lake, the owners of the lands verging to or abutting on the lake own to the center of the lake.

Whether or not this proposition is true depends upon the rights which may be acquired by private owners in the beds of small fresh water lakes.

In the first place, Shandalee lake is about 4,000 feet long, and at its widest part about 1,200 feet wide. It has an inlet and an outlet consisting of small brooks. A fresh water lake of this sort is subject to private ownership. (" Title to Beds of Lakes in New York," F. D. Colson, 9 Cornell Law Quarterly, 159, 288.)

In the case of small fresh water lakes the rule is that the adjoining proprietors are presumptively the owners of the soil under the water to the center of the lake. This rule, however, applies when the abutting lands are bounded by the lake, or where the case involves a stream of water non-navigable where the lands are bounded by the stream. (*Mott* v. *Mott*, 68 N. Y. 246; *Smith* v. *City of Rochester*, 92 id. 463; *Gouverneur* v. *National Ice Company*, 134 id. 355.)

In the case at bar there is an entirely different situation in relation to the boundary lines. Here the lands of the plaintiff and the defendants are not bounded by the lake or the shore of the lake, but are bounded by lines within which are included portions of the lake. To sustain the defendants' contention, therefore, it would be necessary in this case to hold that where an owner owns land abutting upon a lake and the lines of his lot extend out into the lake, either to a point falling short of the center or to a point beyond the center, these lines are not controlling.

The defendants rely upon *Calkins* v. *Hart* (219 N. Y. 145). In that case it appeared that the plaintiff by deed obtained title to ninety-four acres of land surrounding the northerly end of Spring or Mud lake, and included about three-fourths of the length of the lake on the easterly side thereof. In the *Calkins* case, as in this case, the lands of the plaintiff as described in plaintiff's deed were not bounded by the lake, but extended out into the lake. While plaintiff's deed included lands under the waters of the lake, it will be found by an examination of the record on appeal that the plaintiff was unable to sustain his title to the lands under the water. This is noted by the Court of Appeals. They say: " The

trial justice held that plaintiff could not under the proofs offered establish title to all lands under water to the westerly side of lot number thirty-three, but had established title to the thread of the stream." The question decided by the trial justice and the Court of Appeals, which affirmed the trial justice, related to the location of the thread of the stream or the center of the lake, in view of the peculiar shape of the lake. Spring or Mud lake was oval in form. It was held that the rights of the abutting owners in this lake should be fixed by extending the boundary lines of the abutting lands to a line drawn through the center of the stream north and south. The effect of this decision is simply to determine the rights of the abutting owners upon a lake oval in form where their lands run to the center of the lake and not by lot lines extending out into the lake.

It appears to be assumed by the court that, if the plaintiff could have made title according to his deed so that the lines of his lot extended into the water, the result would have been different.

This assumption is in line with the authorities.

The rule in this State is that the principles of private ownership apply to the bed of a small lake or pond the same as to any other land. (*Gouverneur* v. *National Ice Company*, 134 N. Y. 355; *Mott* v. *Mott*, 68 id. 246.)

Where in such a lake a person owns a portion of the bed of the lake, that person has an exclusive right of boating, bathing and fishing in the waters of that portion over the bed of the lake owned by him. (*Commonwealth Water Company* v. *Brunner*, 175 App. Div. 153; *Tripp* v. *Richter*, 158 id. 136; *People* v. *Platt*, 17 Johns. 195.)

Where the owners of lands under the waters of such a lake grant an easement for certain purposes they may not thereafter use the water of such lake so as to interfere with the rights so granted. (*Commonwealth Water Company* v. *Brunner*, 175 App. Div. 153.)

There is no complaint in this case that the purpose of the easement of the right to erect a dam and raise the waters of the lake one foot is interfered with in any way by the use which the owners of the lake now make of it.

The plaintiff and the defendants are each entitled to an injunction restraining the trespasses complained of within the lines of their respective lots in the bed of the lake.

Submit findings.