McCord v. High.

## McCord v. High.

1. Water-course: DIVERSION: PUBLIC USE. The owner of lands through which a stream of water flows, has a right thereto without diversion, interruption or diminution; and this right is in the nature of a freehold right which cannot be taken for public use without just compensation.

2. Officer: JUDICIAL ACTS OF: DISCRETION. The fact that an officer is clothed with a discretion in the discharge of a duty as to the *manner* of its performance, or as to the control of attendant acts or circumstances necessarily arising in its course, does not give to his acts a judicial character.

3. Water-course: HIGHWAY: OFFICER. The construction, by a road supervisor, of a crossing to a stream over which a highway passes, is a ministerial act, and must be so performed as that a person through whose land the stream meanders will not be injured thereby in the diversion or diminution of the stream.

4. —— CORPORATION MUNICIPAL. The doctrine recognized, that municipal corporations are liable for the negligent construction of improvements and repairs of streets; and this doctrine held applicable in determining, that road supervisors are liable for the diversion of a stream by the negligent construction of a crossing thereover.

5. Malice: PLEADING. If a defendant is liable for negligent or careless acts, a recovery may be had against him upon a petition charging the acts to have been willfully and maliciously done, without proof of malice. The allegations of malice and willfulness will, in such case, be treated as surplusage.

6. —— MAY BE INFERRED. Malice may be inferred from the acts of a party; and where such acts are designed to injure the plaintiff, the jury are bound to infer malice.

7. Water-course: DIVERSION. Where a person has been deprived of a portion of a stream flowing through his land, by its diversion through an artificial channel made by a road supervisor in the construction of a crossing for a highway over the stream, he may dam up the artificial channel, and thus restore the flow of water to the natural one.

8. Officer: LIABILITY. Where a public officer other than a judicial one, does an act directly invasive of the private rights of others, and there is otherwise no remedy for the injury, such officer is personally liable without proof of malice and intent to injure.

*Appeal from Black Hawk District Court.*

SATURDAY, APRIL 18.

THE petition of plaintiff shows, that he is the owner of certain lands in Black Hawk county, through which a certain stream of water called Spring creek flows; that the stream, in its natural channel, meanders through plaintiff's land and flows off it near where it enters thereon; that a public highway crosses the stream at its entrance upon plaintiff's land; that defendant, acting as road supervisor, "willfully and maliciously intending to injure the property of plaintiff," erected across said creek, in said highway, a certain obstruction whereby a great portion of the water in said stream was diverted from its natural channel and caused to flow in an artificial channel away from the land of petitioner, which was used as a pasture; that plaintiff, in order to confine said stream to its natural channel, filled up, said artificial channel, but the defendant did "willfully, maliciously and fraudulently," cause said artificial channel to be opened, and enlarged the same so that the water would be diverted from the natural channel; that, on account of said obstruction erected by defendant, the greater part of the water is diverted to, said artificial channel, which by the action of the water is becoming deeper and wider, and through which, in course of time, all the water of said stream will flow, unless said obstruction erected by de-

fendant shall be removed. The water, so diverted, does not flow at all on plaintiff's land, but re-enters the stream at a point not upon the same.

The defendant sets up as a defense, that he was the road supervisor of the district; that "in good faith, and according to his best judgment, he caused said highway to be repaired" in the best manner he was able, with the amount of means at his disposal, "in order to make the same" passable for the public; that no obstruction was erected across said stream by him, and that no diversion was caused in the flow of the stream, and denies the injury complained of by plaintiff. He charges, that the artificial channel was made before plaintiff became the owner of said land; that plaintiff "willfully and maliciously filled it up, which caused the water to "gully out" the highway, and in order to keep it passable, it became absolutely necessary for the defendant to open the said artificial channel; that at the time plaintiff purchased the lands, he had full knowledge of the necessity of keeping open said artificial channel in order to protect said highway.

The cause was tried by a jury, and, in the progress of the trial, plaintiff offered to prove that the artificial channel was continually becoming deeper and wider, and that, with the obstruction complained of, the necessary effect would be to divert entirely the water from the natural channel so far as the same was upon plaintiff's land. The defendant objected to this evidence on the ground of its incompetency. The objection was sustained and the evidence was not permitted to go to the jury, to which plaintiff excepted.

Plaintiff asked one of defendant's witnesses, upon the cross-examination, this question: "What is the present condition of the obstruction placed by defendant across the stream at the point in question?"

McCord v. High.

This was objected to, because the evidence sought to be elicited was immaterial, and because the evidence must be confined to the condition of the obstruction when defendant left it. Objection sustained, and plaintiff excepted. The evidence of plaintiff tended to prove, that before the alleged obstruction was made, there had been two bridges erected over the stream, both, however, had been washed away by freshets; that before the plaintiff bought the land the artificial channel had been made that carried part of the water away from plaintiff's land; that the defendant, for the purpose of making the roadway across the stream, which was near twenty feet broad and had banks three or four feet high, erected stone abutments six feet apart, and from eight to twelve inches in length, and covered them with poles and brush, and over all making an embankment with stones and earth; that at the time he was doing the work, plaintiff expostulated with him as to the manner of doing it, and claimed, that it would divert the water from his land, and offered to furnish him with lumber at his (plaintiff's) own cost to enable him to build a bridge, but defendant refused to build the bridge, and completed the work; that the work turned the greater part of the water off of plaintiff's land, and the passage-way for the water became nearly, if not quite, filled up; that, in order to cause the water to flow in the natural channel, plaintiff filled up the ditch cut for an artificial channel, but defendant opened it again, making it deeper than it was before; that plaintiff suffered inconvenience by not having sufficient water for his stock, which had been plentifully supplied before by the stream in question.

The evidence for defendant was contradictory to that for plaintiff, and tended to show that plaintiff sustained no injury by the obstruction which was erected for the

purpose of repairing the highway, and that it was built in accordance with the defendant's best judgment.

The following instructions to the jury, in substance, were asked for by plaintiff and refused by the court, plaintiff excepting to such refusal:

1. If the defendant erected an obstruction to the water across the natural channel of the stream, which was unnecessary to render the highway passable, whereby plaintiff sustained damages, he is entitled to recover the same in this action. This instruction was refused in this form, but given with an amendment added, substantially as follows: If the defendant was a supervisor of highways, and did the work in repairing the highway, he is not liable unless the work was done in such a manner as to unnecessarily injure plaintiff, and with intent willfully and maliciously so to do, and this intent must be affirmatively shown.

2. The defendant, as supervisor, had not the right to make any obstruction in the natural channel of the stream which would turn the water from the lands of the plaintiff, and, in case he has made such obstruction, he is liable in this action for the damages plaintiff has sustained, " unless there was no reasonable means of making the crossing of said stream safe and convenient for the public without obstructing the free passage of the water in its natural channel."

3. The plaintiff had the right to change the flow of the water from the artificial back to the natural channel, if in so doing he did not render the highway dangerous for the public; and, if the defendant afterward caused the water to flow in the artificial channel, thereby turning the water away from the plaintiff's land, whereby he sustained damages, defendant is liable therefor in this action.

4. It was the defendant's duty, in making the crossing

McCord v. High.

for the road over the stream, if it could have been done with reasonable care and expense, so to build it that it should not interfere with the free passage of the water in the natural channel of the stream, and if he has failed so to do, whereby plaintiff has sustained damage, he may recover the same in this action.

5. If the erection made by the defendant is an unnecessary obstruction to the passage of the water, in its natural channel, and a crossing of said stream could have been made safe for the public with reasonable expense, and in a way so as not to obstruct the water in the natural channel, and the plaintiff has and necessarily will sustain damage thereby, the jury may by their verdict declare the same a nuisance.

6. If the jury are convinced from the acts of the defendant that he designed to injure plaintiff, they may therefrom find such acts were maliciously done.

On motion of defendant, the court instructed the jury as follows, plaintiff excepting thereto:

1. That if the defendant, acting in the discharge of his duties as road supervisor, made the obstruction complained of, he is not liable therefor, unless the act was done maliciously and without probable cause; and that malice must be shown affirmatively.

2. That a public officer is not liable for errors of judgment. That the public have claims upon him, and he is obliged to act, and unless his acts are clearly malicious, and done with the intention to injure another, he is not liable therefor.

Under these instructions the jury rendered a verdict for defendant; plaintiff moved for a new trial on the ground that the law had been incorrectly given to the jury; the motion was overruled, and plaintiff appeals.

*Boies & Allen* for the appellant.

*Powers & Heminway* for the appellee.

BECK, J.—The owner of land over which a stream of water flows has a right thereto without diversion, inter-

1. WATER-
COURSE:
diversion:
public use.

ruption or diminution of that element so indispensable to life, both animal and vegetable, and so useful as a propelling power for machinery. The law recognizes a water-course as a subject of property, and guards the rights of owners thereof with the same care that it extends to all other things that are the subjects of exclusive ownership. The right which the owner of lands has to a water-course flowing over them is in the nature of a freehold right, and it cannot be taken from him constitutionally for public use without just compensation. *Gardner* v. *Newburgh,* 2 Johns. Ch. 162; *Canal* v. *People,* 5 Wend. 423; *Ex parte Jennings,* 6 Cow. 518; *Platt* v. *Johnson,* 17 Johns. 195; 2 Hilliard's Real Property, 111.

This right, being thus secured by the Constitution and laws, cannot be indirectly taken away while protected from direct deprivation. The supreme power in the State cannot enact a law which will authorize the diminution or diversion of the stream from its natural channel for public purposes without providing adequate compensation for the right—the property to be so appropriated to public use.

It surely cannot be claimed that a road supervisor is clothed with such discretion, with such judicial duties

2. OFFICER:
judicial acts
of: discre-
tion.

and powers that he may divest or diminish the water of a stream without rendering to the owner of the property compensation therefor; yet such seems to be the view taken by the court below, and it is urged by defendant's counsel in this court.

The plaintiff can have no remedy against the road dis-

trict, township or county for the damage he has sustained; unless the supervisor is liable, he is without remedy, and his right to the enjoyment of the water— his property therein — may be taken from him without compensation.

It is claimed, that the duties of the road supervisor are both ministerial and judicial to a certain extent; that he is clothed with discretion to determine what work is to be done, and must exercise his judgment as to the proper way to do it, and is not liable for mere error in judgment in the discharge of his duties. It indeed may well be doubted whether the courts and authorities do not often use the terms "judicial acts" and "judicial functions" in too broad a sense when applying them to those acts of officers which require the exercise of judgment and discretion. It appears that Lord MANSFIELD's definition of the terms, confining them strictly to matters in litigation, is more nearly in accordance with the true force and meaning of the words. *Medhurst* v. *Waite*, 3 Burr. 1259. But regarding the duties of the supervisor as of mixed character, partly ministerial, partly *quasi* judicial, as these terms are now understood, we will have no difficulty in arriving at the conclusion, that the acts complained of by plaintiff are not of that *judicial* character that will exempt him from all liability for negligence and carelessness in their performance; in truth, the acts complained of, and which caused the damage for which compensation is sought in the suit, were of a purely ministerial character. It must be borne in mind that, the fact of an officer being clothed with discretion in the discharge of a duty as to the *manner* of its performance, or as to the control of circumstances and attendant acts necessarily arising in the discharge of such duty, will not give to it a judicial character. It is impossible to conceive of any ministerial duty to be performed by an

officer that may not be, that *is* not, accompanied by circumstances which require the exercise of judgment and discretion.

A familiar illustration will probably more clearly express the idea. A sheriff, whose duties are of a purely ministerial character, is required by a *fieri facias*, to make a levy thereof of the goods of the defendant therein, and sell the same, or so much thereof, as may be necessary, and return the writ, with the proceeds, into court. The acts which he is required to do, are the levy, sale and return ; in regard to these acts the writ is peremptory, and he has no discretion and can exercise no judgment to do, or not to do them. The manner of performing these acts are mainly pointed out by the law, yet much is left to the officer's discretion and judgment. The time within which the acts are to be done, is prescribed by the writ, the kind and quantity of property to be levied upon, within certain limits, is prescribed by the law ; but neither the writ nor the law, directs where, or in what manner, many acts necessary to be done, in order fully to discharge his duty, shall be performed. In the performance of these, he exercises discretion and judgment, and is liable for errors and mistakes that may result in loss to others, though they were the result of the deliberate exercise, in good faith, of such discretion and judgment. In short, he has no discretion, and can exercise no judgment, in regard to the end to be attained by his discharge of duty ; as to the means and manner of accomplishing the end, he, of necessity, must be more or less free to choose, for it is impossible for the law to provide rules adapted to the infinite variety of human actions and attendant circumstances that may be met by its ministers. A supervisor of roads being required, in the discharge of his duty, to largely exercise discretion and judgment, does not, therefore, necessarily discharge judicial functions.

McCord v. High.

There can be no great difficulty in determining, when an officer is charged with both judicial and ministerial duties, to which class of duties a particular act belongs.

The character of the act itself, will usually determine whether it be judicial or ministerial. If it be the execution of a determination, committed by the law to the judgment and discretion of the officer, which could be as well done by another as by the one thus clothed with the power of determination, it is a ministerial act. The fact, that it requires skill, and involves judgment and discretion, will not give it a judicial character.

The proper performance of grading, ditching, and the construction of masonry, though they may require the highest order of engineering and mechanical skill, and demand the exercise of a high order of judgment in the selection of materials, and of discretion in the choice of means, cannot be regarded as the discharge of judicial functions. But the determination, that such work is necessary, and must be accomplished, may properly be said to partake of a judicial character.

This brings me to the application of these principles to to the case at bar. The defendant, as supervisor of roads, 3. WATER- is required, by law, to keep the highways in COURSE: repair; he determines when and where repairs highway: officer. are necessary, and what work shall be done in order to effect the repairs. The determination may be regarded as of a judicial nature.

He also is required to direct the work, to make the repairs he has determined upon; this is simply a ministerial duty. These views are sustained in *Lacour* v. *Mayor of New York*, 3 Duer, 406; *Lloyd* v. *Mayor, etc. of New York*, 1 Selden, 369; *City of Camden* v. *Mulford*, 2 Dutcher, 56; *The Rochester White Lead Co.* v. *The City of Rochester*, 3 Comst. 466.

The defendant, in the case at bar, saw fit to change the
VOL. XXIV.—44

crossing of the stream, by dispensing with a bridge which had before been used, and erecting an embankment and culvert. Whatever rights the public had acquired, to cross the stream by user, and by acquiescence of the plaintiff, were confined to the use of the bridge, or such other manner of crossing as would interfere in no greater degree with the rights of plaintiff to the water, than did the bridge. The act of thus changing the manner of crossing the stream was ministerial in its nature, and it was the defendant's absolute duty so to perform it that plaintiff should not be injured thereby. *The Rochester White Lead Co.* v. *The City of Rochester*, 3 Comst. 463; *The City of Camden* v. *Mulford*, 2 Dutcher, 56.

The liability of a road supervisor, for injuries sustained by another, on account of the negligent and improper erection of a culvert over a stream of water, was recognized in *Conwell* v. *Emrie* (4 Ind. 209), a case very similar in facts to the one at bar.

The powers of road supervisors are similar to those exercised by cities, through their officers and agents, in 4. —— grading, paving, and otherwise improving corporation: municipal. streets. They derive their powers from the same source, and exercise them for the same purpose, and in reason, each must be subject to the same liabilities for their improper or careless exercise. Such powers, and their correlative duties, are of the same *quasi* judicial nature, when exercised by cities or towns, and by supervisors. The doctrine is recognized in very many authorities found in the books, that cities and towns are liable for negligent and careless construction of improvements and repairs of streets. Such have been the frequent rulings of this court. *Wallace* v. *Muscatine*, 4 G. Green, 373; *Creal* v. *Keokuk*, id. 47; *Cotes & Patchin* v. *Davenport*, 9 Iowa, 233; *Freeland* v. *Muscatine*, id. 461; *Templin* v. *Iowa City*, 14 id. 60. The doctrine of

McCord v. High.

these cases must be applicable to the question of the liability of road supervisors, at least, so far as to determine, that they are not exempt, on account of the *quasi* judicial nature of their duties and powers.

It follows, that the first, second and fourth instructions, asked for by plaintiff, should not have been refused. If they fail to announce the law correctly, they do so in giving it too favorably for defendant.

The instructions given the jury on the motion of defendant, and the amendment to plaintiff's first instruction, are erroneous in the light of the principles above stated.

It is claimed, by defendant's attorney, that, inasmuch as plaintiff, in his petition, avers that the acts complained 5. MALICE: of were willfuly and maliciously done, recov- pleading. ery cannot be had for careless and negligent acts, but only for such as were proven to have been willful and malicious, and this seems to have been the principle that guided the court below in giving and refusing instructions.

If the defendant is liable for negligent and careless acts, recovery may be had against him upon the petition charging the acts to have been willful and malicious, without proof of malice. This was the rule under the old system of pleading, which was more strict in its requirements that the proof should correspond with the allegations of the declaration, than is our present system. It is held, that the allegations of malice and willfulness may be disregarded as surplusage and proof given of negligence and carlessness. 1 Chitty's Pleadings, 424; 1 Hilliard on Torts, 138; *Panton* v. *Holland*, 17 Johns. 92.

The court erred in refusing the sixth instruction asked by plaintiff, which is to the effect, that the jury may infer 6. —— may be malice on the part of the defendant if they inferred. were satisfied from his acts that he designed to injure the plaintiff. There is no clearer rule of evidence

than that malice may be inferred from the acts of a party.
If those acts of the defendant were of such a character
as to convince the jury that injury was designed to
plaintiff, they were bound to infer malice. Malice is de-
fined to be a disposition, a design to injure another. It
is properly inferred from the acts of a party, indeed, is
most usually so proven.

The third instruction of plaintiff should have been
given to the jury. It does not appear from the evidence
7. WATER- that plaintiff had abandoned his right to have
COURSE:
diversion. all the water of the stream flow through its
natural channel upon his land, or that he had in any
way been deprived of that right. He had, therefore,
lawful authority to dam up the artificial channel and
thus restore the flow of water to its natural channel.
The defendant had no right to divert the water from the
natural channel and restore the artificial channel. If, in
doing so, plaintiff sustained damage, he is liable therefor.

The other objections to the ruling of the court below
need not be considered, as the case must, for the reason
already given, be reversed.

Reversed.

DILLON, Ch. J.—I have had in my own mind so much
difficulty respecting the main question in this case, viz.,
8. OFFICER: the personal responsibility of the road super-
liability. visor, that I desire to state briefly why I as-
sent to a reversal of the judgment of the District Court.
If the act of the supervisor which caused the injury were
malicious, I should, of course, entertain no doubt as to
his liability.

But the doubt I have had respects his liability for
injuries not willfully or maliciously caused by him.
That the road supervisor is exempt from liability for
certain mistakes of judgment, honestly made in the per-

McCord v. High.

formance of his official duties, I have no question. If his acts be not strictly judicial, they are in certain cases (as for example, the kind of a bridge he will build or the requisite capacity of a culvert) in the nature of judicial acts, and rest to some extent upon the same principle. The supervisor is bound to accept his office or be fined. He is bound to exercise his judgment as to the kind of improvements he will make; and this may be influenced by the extent or amount of means or resources at his command. He may not in many cases be able to execute his best thought or judgment. To a certain extent, he must be free to exercise his judgment without being liable to have an action brought against him if his judgment should in a particular case turn out to be faulty.

But private rights of property are also to be respected. A very old and just maxim of the law is, that where there is a wrong, there is a remedy. The law recognizes, as is very correctly stated in the opinion of Mr. Justice BECK, as high a right of property in the water-course as in the soil. If an individual obstructs or diverts a water-course, the injury is actionable. So it is if done by a municipal corporation. Whether the public officers of such corporation who do the work which occasions the damage in the course of their official duties, are also liable, admits, in my mind, of more doubt.

The injury of which the plaintiff complains is actionable in its character; but against whom shall the action be brought?

It cannot be brought against the *road district* of which the defendant is supervisor, because, as was settled in *White* v. *The Road District* (9 Iowa, 202), the road district is not, under our statute, liable to be sued as a *quasi* corporation or otherwise. For the same reason, it cannot be brought against the *township*.

HARVARD LAW SCHOOL LIBRARY.

And it would seem, that under the decisions of this court (*Wilson* v. *Jefferson Co.*, 13 Iowa, 182; *Brown* v. *Jefferson Co.*, 16 id. 339; *McCullom* v. *Black Hawk Co.*, 21 id. 409; *Bell* v. *Foutch*, id. 129), the bridge or culvert in question, not being built by the county officers or by direction of the county authorities, so far as shown by the record, the *county* would not be liable for the injury the plaintiff sustained from the obstruction or diversion of the water-course.

So that, although the injury done the plaintiff is a direct invasion of his rights of property, and actionable. in its nature, he is without remedy, unless it be against the defendant. In such a case, upon principles of justice, the action should, I think, be held to lie against the public officer.

And the principle involved in this holding, and which, upon the whole, I believe to be sound, is this: That where a public officer other than a judicial one, does an act directly invasive of the private rights of others, and there is otherwise no remedy for the injury, such officer is personally liable without proof of malice and an intent to injure. If this is so, the court erred in its instructions to the jury, and its judgment must be reversed.

Whether the supervisor would be liable if the plaintiff had a remedy against the road district, township or county, I give no opinion.

The discretion which protects such an officer as the road supervisor stops at the boundary where the absolute rights of property begin. Suppose the plaintiff had a mill upon the stream, would it do to hold, that the road officers could if they saw fit or judged best, entirely obstruct or essentially diminish the water?

I think not. And this view has the merit of protecting the rights of property without, as I think, placing these officers under any oppressive responsibility. Cases,

without merit against an officer who had simply erred in judgment would not meet with any favor from either courts or juries.