Pickerell v. Kunst.

B. F. PICKERELL ET AL.

v.

JOHN KUNST,

1. HIGHWAY COMMISSIONERS—SUIT BY INDIVIDUALS FOR DUTY OWED PUBLIC GENERALLY.—*Quære* whether a single individual who suffers special damage by reason of the negligent performance of a duty, owed by the commissioners of highways to the public generally, can maintain an action therefor.

2. LIABILITY OF COMMISSIONERS FOR NOT KEEPING BRIDGE IN PROPER REPAIR.—A bridge at a crossing had been washed away and the old material had been gathered together, and a temporary bridge constructed by the highway commissioners beside the new bridge which was in process of construction. Appellee, who had frequently driven over this temporary bridge, brings this action before a justice of the peace against the commissioners, charging them with a breach of offic'al duty in not keeping the bridge in proper repair, in consequence of which appellee lost a horse. *Held*, assuming that this action will lie, to determine whether or not appellants were bound, in the exerc se of reasonable diligence, to repair the bridge at that particular juncture would depend upon a variety of circumstances, among which would b their financial condition with respect to other necessary works and the approaching completion of the new bridge; that as the evidence shows the

bridge was repaired in August, and was at the time of the accident apparently safe and sound, before appellants can be held liable it must appear that the defects, if any, of which complaint is now made, were either known to appellants, or that the circumstances surrounding them were such that it was negligence in them not to have noticed them.

APPEAL from the Circuit Court of Sangamon county; the Hon. W. R. WELCH, Judge, presiding. Opinion filed November 21, 1884.

Mr. WILLIAM L. GROSS and Messrs. PALMER, ROBINSON & SHUTT, for appellants.

Messrs. PATTON & HAMILTON, for appellee; that the construction or repair of a bridge is a ministerial duty, cited Tearney v. Smith, 86 Ill. 391; Cooney v. Town of Hartland, 95 Ill. 516.

Commissioners of highways are liable not only for misfeasance, but for nonfeasance: Thompson on Negligence, 820, note 3; Hover v. Barkhoof, 44 N. Y. 113; Robinson v. Chamberlain, 34 N. Y. 389; Smith v. Wright, 24 Barb. 170; McCord v. High, 24 Ia. 436; Nowell v. Wright, 3 Allen, 166.

McCULLOCH, J. This was a suit commenced before a justice of the peace by appellee against appellants, to recover damages resulting from their alleged neglect of official duty as commissioners of highways, in failing to keep a bridge in proper repair, in consequence of which appellee lost a horse.

It appears from the evidence that, at the crossing of the stream in question, there had been a bridge, but in the early part of the summer it had been washed away by a flood. Appellants thereupon gathered together as much of the old material as they could, and constructed a temporary bridge on one side of the right of way, to answer the purposes of public travel until they could construct a new bridge in the center of the highway, and upon the site of the old one.

This new bridge was in process of construction at the time of the accident which occasioned the injury complained of and was nearly finished.

The temporary bridge already mentioned was then in use by the public for the purposes of public travel. Appellee had passed over it two or three days prior to that time, and must have known of its general condition and of the fact that it was only a temporary structure, erected for the convenience of the public until the new one, then in process of erection close beside it, could be completed. It was built so low that in time of high water it would be overflowed, and in approaching it teams were obliged to make a slight divergence from the old and beaten track and to come upon it by a steep descent. Appellee so approached it about nightfall of a foggy day in November. He was accompanied by another man by the name of Sunderman, who was driving another team immediately in the rear of his. As appellee approached the bridge Sunderman stopped his team to see how he would get over. As soon as appellee's team got fairly on the bridge and the front wheels of the wagon were about the edge of the planks the "off horse" fell from the bridge into the stream beneath, and, in the struggle that ensued, the tongue of the wagon became so fixed across its neck and head as to confine it beneath the water, and in a very short time it was drowned.

As there were no written pleadings in the case we are obliged to look to the evidence for the purpose of discovering the acts of negligence complained of. Appellee, who is the only witness of the occurrence, is a German and has but a limited command of the English language. It is therefore somewhat difficult to understand perfectly what he means to say, but from his several statements it appears that as he went on the bridge he saw nothing wrong, but when the horses had got so far along that the wheels of the wagon were about at the edge of the first plank, and the wagon was pushing forward upon the horses by reason of the steep descent, a plank slipped from its place and was pushed forward on top of the next one to it, leaving a hole in the bridge. At this the "nigh horse" became frightened and crowded the other one off the side of the bridge into the water beneath it. Appellee is to some extent corroborated in his statement by Sunderman, who says that when appellee called for him he went forward and found the hole in the bridge as described by appellee.

It is contended by counsel for appellee that in the construction of this bridge appellants were guilty of the grossest negligence and misfeasance. A number of supposed defects are pointed out which go to show that it was not constructed in a very artistic manner, but since the accident to appellee's horse can not be attributed to any other defect than that of the looseness of the planks, it will not be necessary for us to discuss that branch of the case.

In order to justify a recovery in a case like this it must appear not only that the defendant was guilty of the negligence which caused the injury, but that the plaintiff was in the exercise of ordinary care. The evidence in the case leaves it very doubtful in our minds whether such a degree of care is shown on the part of the plaintiff. He says he drove on the bridge in the center of the traveled way, but the position of his wagon and the tracks it made in approaching the bridge show he did not. We think the evidence preponderates in favor of the claim made by appellants' counsel, that the front wheel on the right hand side of the wagon did not strike the bridge at all but missed it by several inches. If this was the case then his team was in dangerous proximity to the edge of the bridge, and possibly the whole trouble arose from this fact alone.

But be that as it may, the question still remains to be determined whether or not the evidence shows such a degree of negligence on the part of appellants, as to render them liable to the plaintiff for the injury he has sustained.

The negligence complained of is the breach of official duty in not keeping the bridge in proper repair. It is not contended that the town in its corporate capacity is liable. Hence the suit is brought against the commissioners in their individual capacity, for a breach of official duty, whereby appellee has sustained damages for which the law gives him no other remedy.

The case stands upon very different grounds from one in which a municipal corporation is sued for damages, resulting from its failure to keep its streets or bridges in proper repair. In the latter case the duty is cast upon the municipal

ity to keep its bridges in a reasonably safe condition for public use. They have the power and it is their duty to provide themselves with the necessary means to do so. In this case the commissioners are sued for negligence in the discharge of the duties of their office, whereby damage has accrued to a private person from their neglect.

It has been a disputed question, and it is not yet settled in this State, whether or not an action can be maintained against them. The cases cited by counsel for appellee from our own Supreme Court, we do not regard as deciding the question. It may well be said, that if the commissioners in constructing a ditch or an embankment, invade the rights of an adjoining property owner, or cause his land to be overflowed, an action will lie against them individually for the damage they have done. But it is not so clear that a single individual who suffers special damage by reason of the negligent performance of a duty, owed by the commissioners to the public generally, can maintain an action therefor.

Assuming, however, that the action will lie, it becomes important to know under what circumstances the law will hold them liable. In Hover v. Barkhoof, 44 N. Y. R. 113, which settles the law of the State of New York, after a great conflict of authorities in that State, the rule is thus laid down, that the commissioners of highways, having the requisite funds in hand, or under their control, are bound to repair bridges which are out of repair, they having notice of their condition, and they are bound to repair them with reasonable and ordinary care and diligence, and, if they omit this duty, they are liable to individuals who sustain special damage from such neglect. See also, Robinson v Chamberlain, 34 N. Y. R. 389; Garlinghouse v. Jacobs, 29 N. Y. R. 297.

It is also said (Hover v. Barkhoof, *supra*,) that if it should appear that the commissioners had some money and that there were many roads and bridges to be repaired, then they would have a discretion as to where the money should be expended, and that their duty to repair any particular bridge might so far depend upon circumstances, and be so uncertain and indefi-

nite, that they could not in any way be made liable for negligence.

In Bartlett v. Crozier, 17 Johns. R. 440, Chancellor Kent had denied the right of action altogether, giving as one of his reasons therefor, that the duty to repair was not absolute and imperative, but dependent upon a train of circumstances indefinite and varied.

Numerous other cases are referred to in Thompson on Negligence, 818–20, which go to show the unsettled condition of the law upon this subject. It will be seen, however, that the action, wherever it is allowed, is grounded upon the neglect of some official duty, upon the performance of which the safety of the individual in respect to his person or his property depended. It has therefore been held that if, in consequence of a neglect on the part of the officer charged with the duty of repairing a public structure, in the performance of his duty in that regard the same gets out of repair and a private person suffers damage therefrom, and has no other remedy, such officer is personally liable. McCord v. High, 24 Iowa, 336.

But it may be asked, wherein consists the breach of official duty on the part of appellants? When the former bridge had washed away, it then became their duty with reasonable speed to restore it by building a new one, if that was necessary for the public travel. But before proceeding to do so they must have provided the necessary funds by levying a tax, unless they had already provided funds applicable to that purpose. Town of Harwood v. Hamilton, 13 Bradwell. Having proceeded to build a new bridge, then it may be asked, under what obligations were they to gather together the materials of the bridge that had been washed away, and to construct therefrom a temporary bridge for the use of the public? We think it would be difficult to show that their failure to do so would have been a breach of their public duty.

But they did proceed to gather up the said materials and put them into the temporary bridge upon which the accident happened. During the summer it was washed away a second and a third time and again replaced. It was erected for a temporary purpose only, and this was apparent to every

passer-by, from the fact that the new bridge was in process of erection close beside it, and appellee had notice of that fact from having passed over it only a short time before. This also appears from the fact that on approaching the bridge just before the accident, he notified Sunderman of its condition, whereupon Sunderman stopped his team to see if appellee would get over in safety. It therefore appears that appellee knew of the temporary nature of the structure and must have known that the commissioners would not be justified in expending a very considerable amount of the public money in keeping it in repair. He is not, therefore, in a condition to complain that appellants did not bestow the same amount of care upon it they would have done had it been a permanent structure.

Having erected this temporary bridge for the use of the public until the new one could be completed, the real question in the case is, whether or not under all the circumstances surrounding them, they failed to exercise reasonable care in the discharge of their official duty in respect to its maintenance for the purpose intended in its erection. Thompson on Negligence, 796; Humphreys v. Armstrong Co., 56 Pa. St. 204.

To determine whether or not they were bound, in the exercise of reasonable diligence, to repair the bridge at that particular juncture, would depend upon a variety of circumstances, among which would be their financial condition with respect to other necessary works and the approaching completion of the new bridge.

The evidence in the case establishes the fact that the bridge was repaired early in August; that then about five of the planks at each end of it were securely nailed down and that heavy timbers, reaching the whole length of the bridge, were laid upon both ends of all the other planks.

This arrangement served the purpose well. The road upon which it was erected was a very public one and a great deal of teaming and heavy hauling was being constantly done over it. It bore up well under all this, except that on one occasion it gave way under the weight of a steam separator, but the

injury then done was immediately repaired. The public seemed well satisfied with it and trusted it implicitly.

The bridge being thus apparently safe and sound, before appellants can be held liable it must appear that the defects, if any, of which complaint is now made, were either known to appellants, or that the circumstances surrounding them were such that it was negligence in them not to have noticed them.

They knew the planks were not spiked down to the stringers, but, in lieu of spikes, they had placed heavy timbers upon them. So far as the evidence shows they had any knowledge upon the subject, this arrangement had answered the purpose well. It is true one or two persons testified that in crossing the bridge they had encountered some trouble by some of the planks becoming misplaced. But no notice of these occurrences had been brought home to appellants. On the contrary, the evidence shows that they had no notice of any such occurrences, and such was the frequency of teams passing over the bridge that if anything of that kind had often happened, they would have heard some complaint about it.

This being one of the essential elements in the plaintiff's right of recovery, and the proof failing to sustain it, the court below erred in overruling the motion to set aside the verdict.

Some question is raised in the argument as to the propriety of certain rulings of the court in giving and refusing instructions, but inasmuch as they are not set out in the abstract we can not notice them. Except in regard to the looseness of the planks, and appellants' notice thereof, we can not see that under any circumstances the evidence in this record could charge appellants with being the cause of appellee's loss.

It is for the court to lay down the rule governing the measure of diligence required by appellants and for the jury to say by their verdict whether or not they have performed their duty according to that rule. This we understand to be the meaning of the expression that negligence is a question of fact. Thus, if the case is one in which the exercise of reasonable care and prudence is required, the jury should be told

Pickerell v. Kunst.

that such is the measure of the defendant's duty, and then they should be left to say whether or not, under the circumstances in proof, the defendant has exercised that degree of care.

Being of the opinion that appellee has failed to make out a case wherein appellants have been guilty of such misconduct in office as to render them liable for the loss appellee has sustained, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.

HIGBEE, P. J.   I concur in this opinion, but I am also of the opinion that the justice of the peace had no jurisdiction in the case.