ANNIE J: LYNCH *vs.* WALTER L. CLARKE, City Treasurer.

PROVIDENCE—DECEMBER 15, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Municipal Corporations.　Highways.　Water Courses.　Culverts.*

Where a culvert was constructed by a municipal corporation to carry the water of a natural stream under a street, the only duty imposed upon the municipality was to receive the water of the stream at the point where its culvert commenced and carry it under the street to the lower end of said culvert, but it was not called upon to take care of a connecting culvert constructed by someone else to facilitate the flow of the water to or through its culvert. The mere fact that the municipality had notice that a citizen had obstructed the water course at some point either above or below the culvert which it had built imposed no duty upon it in regard thereto, or rendered it liable for damages resulting from such obstruction.

*Quære*, as to the duty of the municipality had it constructed the connecting culvert or assumed the care of it.

(2) *Municipal Corporations.　Highways.　Water Courses.　Culverts.*

*Semble,* that where the municipality takes an active part in creating the obstruction, though such obstruction is at a point above the end of the culvert built by the city, the latter would be liable for the resulting damage to the land owners.

TRESPASS ON THE CASE, on facts fully stated in opinion. Heard on petition of defendant for new trial, and granted.

TILLINGHAST, J. The plaintiff seeks by this action to recover damages from the city of Providence, alleged to have been sustained by reason of its failure to properly maintain a

drain or culvert through and under Willard avenue, one of the streets of said city.

The declaration sets out that the defendant city constructed said street across a natural water course, and that in order to receive and carry off the water thereof it constructed a drain or culvert under said street. And the plaintiff avers that it was the duty of the city to keep said culvert in repair and free from any obstruction, and in a condition to fulfill the purposes for which it was constructed; but that, wholly and utterly disregarding its duty in this respect, it negligently permitted said culvert to become filled and stopped up with earth and other material, thereby causing said stream of water to flow into and upon the plaintiff's land, to her damage.

The declaration also sets out that the defendant city constructed a certain drain or culvert under said Willard avenue, to receive and carry off the surface water in order that it should not accumulate above said Willard avenue, between Staniford and Gay streets, in said city, and she avers that it was the duty of said city to keep the culvert in repair for the purpose of carrying off said surface water; but that it has negligently failed to do so, whereby the plaintiff has been injured by reason of said surface water flowing back upon her land, etc.

At the trial of the case in the Common Pleas Division the plaintiff recovered a verdict in the sum of $450, and the case is now before us on the defendant's petition for a new trial, on the grounds of certain alleged erroneous rulings on the part of the trial court, to which exceptions were duly taken, and that the verdict was against the law and the evidence.

The facts in the case, in so far as they are material to the decision of the questions raised by the exceptions, are substantially as follows, viz.:

Clinton street, now Willard avenue, was built by the city, in 1884, across a natural gulch which extended both north and south of the street, and which on the southerly side of the street broadened out into a deep hollow of quite large area. A natural stream ran through this gulch, across the present location of Willard avenue, northerly and then northeasterly

across the present Blackstone and Plain streets, into what is known as Hospital pond. The water of this stream was used by the old Rhode Island Bleachery, and in the southwesterly part of the hollow near the present Hilton street, where the stream had its source in a spring, a fountain had been constructed from which an underground wooden pipe had been laid to the bleachery. The stream was formed by the overflow water which the pipe did not carry, and in times of rain was augmented by the surface drainage. With the development of the city the area included in the gulch north of Willard avenue to Plain street was used as a common dump and was gradually filled in, and streets were laid out across it, and buildings erected, so that it is now compactly built up.

A stone culvert, two and one-half feet square on the inside, was built thirty-one feet below the surface of the street to carry the stream across the street, and this culvert was built about one hundred and thirty-two feet long, in order to extend beyond the necessary slopes supporting the sides of the street.

In 1894 the city added to the end of the culvert on the south side of Willard avenue some twelve-inch sewer pipe, twenty feet in all, to clear the dirt that rains had washed down the embankment, and placed in front of the end of the pipe a grating consisting of wooden stakes driven in the ground. At the time this pipe was added the culvert, which had become partially clogged up with dirt, was cleaned out.

Shortly afterwards, in the same year, Hanrahan & Whittle, the owners of said bleachery, on account of the filling in and obstruction of the stream from various causes, laid about one thousand feet of pipe north of Willard avenue to carry the stream. Some of the pipe was laid in the course of the stream between Blackstone and Plain streets, and between the latter street and the Hospital pond on the south side of Willard avenue; and they at the same time laid and connected with the end of the city's culvert, which was at the bottom of the side slope or embankment and which extended sixty-two feet from the street line, one hundred and eight feet of twelve-inch sewer pipe in the course of the stream to a point one hundred and seventy feet from the street line, and put in at the end of the

pipe a bulkhead of stone, and drove stakes to protect the mouth of the pipe.

The city knew that Hanrahan & Whittle laid this pipe and connected it with said culvert, and aided them in making proper connection therewith.

As far back as 1885 the land was being filled in down the hill towards said spring, and in 1894 the public began filling in the land near the southerly side of Willard avenue.

During the time that Hanrahan & Whittle ran the bleachery they kept the pipe laid bv them free from obstructions; but afterwards it became obstructed, from various causes, and the result was that it did not carry the water of the stream down to the culvert built by the city, but overflowed and caused the ponding complained of. There is no evidence which would warrant the jury in finding that the culvert built by the city is obstructed; but, on the contrary, what little evidence there is on this point tends to show the contrary to be the fact.

(1)  In view of the foregoing facts, which appeared in evidence, the defendant requested the court to charge the jury as follows:

1. "If the culvert built by the city under the highway was extended on land not under the highway by a party not the city, to facilitate the bringing of the water to the culvert, the city had no obligation or duty relative to any such connection or extension, or to prevent any such connection or extension from being filled up."

2. "The city's only duty was to receive the water at the highway and carry it under the highway."

These requests were denied by the court, subject to the defendant's exceptions.

The defendant also excepted to the following charges, which were granted at the request of the plaintiff, namely:

1. "That having notice that a citizen had obstructed a water course, or knowledge of the existence of the obstruction, or a sufficient time had elapsed to justify the inference or imputation of notice, the city is liable for not either requiring the

citizen to remove the obstruction or itself providing an escape for such waters."

2. "That the pipe which the city added to the end of the culvert thereby became a part of said culvert, as did also the pipe added by third parties with the knowledge and consent of the city."

We think the defendant's requests to charge stated the duty of the city in the premises with substantial correctness, and, hence, that they should have been granted.

In constructing the street over said water course the city was legally bound to construct a culvert of sufficient capacity to allow of the free and unobstructed flow of said water course, and to keep and maintain such culvert in proper condition for this purpose. See *McCord* v. *High*, 24 Iowa, 336. But it was not called upon to take care of a connecting culvert built by someone else to facilitate the flow of the water to or through the culvert built by the city. Such culvert was on private land, it was private property, and the city not only had no duty regarding the same, but it had no right to interfere therewith, except, at any rate, by the consent of the owner, unless a public nuisance was created thereby, in which case it could doubtless cause it to be abated by proper proceedings. But no such case as that is before us. The case which is before us shows that the city's only duty was to receive the water of said stream at the point where its culvert commenced above the street—that is, the point to which it was extended by the city after the street was built, for the purpose of protecting the mouth thereof from being obstructed by the wash of the high bank of the street—and carry it under the street to the lower end of said culvert as constructed by the city. By so doing the rights of no riparian proprietor on said water course were or could be interfered with, and hence no cause of action against the city could arise. And whether the city has discharged its said duty was the primary and controlling question to be passed upon by the jury in this case.

From what we have thus said it necessarily follows that it was error on the part of the trial court to grant the plaintiff's requests to charge as above set out. The mere fact that the

city had notice that a citizen had obstructed the water course in question, at some point either above or below the culvert which the city had built, imposed no duty upon it in regard thereto. As well stated by the defendant's counsel in his brief: "If the land owners filled, or allowed their land to be filled, so that the stream was obstructed and diverted, that was a matter over which the city had no control and therefore no duty." In this connection it is pertinent to remark that the evidence fails to show that the city either constructed or took charge of the bleachery pipe which was laid as aforesaid. The plaintiff's contention, therefore, that the city is liable for permitting said pipe to become obstructed, and hence liable for damages resulting from such obstruction, is untenable. The undisputed evidence shows that Mr. Whittle, of the bleachery, took care of the pipe as long as the bleachery was run, and that the stream was not obstructed until afterwards.

Had the city in fact constructed this pipe, or even assumed the care of it, a different question would arise. But as it did not do either, there is no occasion for us to consider what would have been its duty if it had.

Again, if the plaintiff's contention is correct, as well argued by defendant's counsel, "that simply allowing the connection of a private drain or sewer with a public drain or sewer is sufficient to make such private drain or sewer a public one which the city must take charge of and keep in condition, it will extend the duty of the city beyond all reasonable limits and involve it in matters in which it has no interest, and require it to expend money for the benefit of individual land owners. Certainly such a result cannot be reached by the mere acquiescence or consent of executive officers of the city, and without at least action by the city council in some form which would authorize or ratify the taking of public control pursuant to some license or grant of the land owners. In this case no such license or grant is shown, and neither has any officer of the city assumed to take such control in behalf of the city." See *Robinson* v. *Danville*, 43 S. E. Rep. 337, and cases cited.

The cases cited by plaintiff's counsel in support of his contention that the requests to charge presented by him and granted

by the court are correct as propositions of law clearly fall short of sustaining him. *Conniff* v. *San Francisco*, 67 Cal. 45, simply holds that the city had no right to erect an embankment across a natural water course in such a manner as to obstruct the natural flow of the waters therein and cause them to run over and permanently remain on the land of an adjoining proprietor. This case might well be cited by us in support of the position which we have taken.

*Schumacher* v. *The City of New York*, 40 App. Div. 320, was a case where a trench was being excavated in a public street, by a private corporation, under legislative authority and under a permit from the city. The work was performed under the immediate supervision of an inspector appointed by the commissioner of public works, as required by the terms of the permit. The excavated material was piled in such a manner as to obstruct a gutter and sewer culvert, which obstruction caused the surface water to overflow into the basement of the plaintiff's building, whereby his merchandise was greatly damaged. The court held, and very properly, that the laying and construction of the tubes in the street, by said corporation, was required to be in such a way as not to interfere with the water-main or surface connections, or with the sewers or house connections of the street. The court said: "The manner of performance of this work was, under the terms of the permit, within the control of the municipality. In this case no protection was afforded against the accumulation of water in the trench, and its percolation through the soil into the plaintiff's premises. The surface drainage from the extensive street territory was cut off so that it could not reach its usual and appropriate outlet, and it was thus collected in the trench at the lowest point to which it would flow as the street was graded.

"We have, therefore, the case of a work authorized by the city, the manner of performance of which is in the control of the city, the fact that the trench was left open for two or three days, and the further fact that no safeguard or protection was afforded against the accumulation of the surface water at a point from which it was liable to be discharged or would find

its way into and upon the premises of adjoining property owners."

*Parker* v. *Lowell*, 11 Gray, 357, holds that it is the well-settled rule of law in Massachusetts, "that in all cases where a highway, turnpike, bridge, townway or other way, is laid across a natural stream of water, it is the duty of those who use such franchise or privilege to make provision by open bridges, culverts, or other means, for the free current of the water, so that it shall not be obstructed and pent up to flow back on lands belonging to the riparian proprietors. And it is their duty not only to make such bridge, culvert, or passage for water, but to keep it in such condition that it shall not obstruct the stream."

We fully agree with the law as thus concisely stated.

*City of Effingham* v. *Surrells*, 77 Ill. App. Ct. Rep. 460, simply holds that a city has no right to collect the surface water and carry it out of its natural course to the vicinity of a person's premises, without furnishing an outlet for it.

The cases of *Bates* v. *Westboro*, 151 Mass. 182; *Barton* v. *Syracuse*, 36 N. Y. 54; *Rose* v. *St. Charles*, 49 Mo. 510; *City of Toledo* v. *Lewis*, 17 Cir. Ct. Ohio, 588; and *Child* v. *Boston*, 4 Allen, 41, in so far as they bear upon the question under consideration, are all to the same general effect, and afford no support for the position taken by the plaintiff—that a city is liable for obstructions placed in a water course, by some third party, above the point where it passes under a street like the one here in question, simply because the city has knowledge of the existence of such obstructions.

(2) If the city takes an active part in creating such obstruction, as there is evidence that it did in the case at bar, by dumping dirt and sewage into the stream or so near thereto that it would naturally be carried into it by the action of the elements, then, even though such obstruction is at a point above the end of the trench or culvert built by the city, we cannot say that it would not be liable for the damage caused thereby. But the only question we are now called upon to decide, and the only one which we do decide, is that it was error on the part of the trial court not to grant the defendant's requests

aforesaid to charge, and that it was also error to grant those presented by the plaintiff.    For these reasons a new trial must be granted.

Petition for new trial granted.

*Norris & Hoffman and Henry W. Greenough,* for plaintiff.
*Francis Colwell and Albert A. Baker,* for defendant.