GEORGE v. VILLAGE OF CHESTER.

(Supreme Court, Special Term, Orange County.   June 30, 1908.)

WATERS AND WATER COURSES—RULES OF STATE BOARD OF HEALTH—ENFORCE-MENT.

    Under Public Health Law (Laws 1893, pp. 1518, 1519, c. 661, §§ 70, 72), as amended by Laws 1904, pp. 1238–1241, c. 484, providing that the state department of health may make rules for protection from contamination of any public supply of potable water, and that the municipality in whose interest a rule is enacted and enforced shall make compensation for all damages occasioned thereby, a village which has, for purpose of a water supply, acquired part of a pond and part of the land along and adjacent thereto, cannot enforce a rule of the state health department against another owner of land adjacent thereto, and so shut him off from the ordinary and reasonable use of the waters adjacent to and covering a part of his land, without paying or tendering him all the damages which he will sustain thereby; his use, though contaminating the water, not being a nuisance in and of itself.

Action by Sampson W. George, as trustee of Philip R. George, deceased, against the village of Chester. Judgment for plaintiff.

Watts & Cox, for plaintiff.
M. N. Kane, for defendant.

TOMPKINS, J.   The plaintiff was the owner of premises a part of which is, and from time immemorial has been, covered by the waters of a lake known as "Long Pond" or "Walton Lake," and plaintiff and his predecessors in title have from time immemorial freely exer‑ cised in and upon said lake, and particularly the part thereof cover‑ ed by and adjacent to said premises, and as an incident and appurte‑ nance to their ownership thereof, the rights of swimming, bathing, wa‑ tering cattle, boating, fishing, and such other rights as are ordinarily exercised by a riparian owner.   The complaint alleges that in or about the year 1894 the defendant, which is an incorporated village, wrong‑ fully and without plaintiff's consent, erected, and has since continu‑ ously maintained, upon certain property near the outlet of said lake, a dam which has raised the waters of said lake several feet and caused them to flow over a great part of plaintiff's premises, thereby damag‑ ing the same, and depriving plaintiff from the use thereof, and the plaintiff asks for equitable relief to prevent the overflow of his lands; but upon the trial that claim was waived so far as this action is con‑ cerned, inasmuch as proceedings are pending on behalf of the defend‑ ant for the condemnation of the plaintiff's lands, overflowed as afore‑ said, and the only question now presented for determination is wheth‑ er the plaintiff can maintain this action to enjoin the defendant from interfering, by threats, criminal proceedings, and the enforcement of the rules and regulations of the New York state commissioner of health, with swimming, bathing, boating, fishing, watering cattle, and such other uses as are generally enjoyed by a riparian owner, by the plaintiff and his lessees.

It appears that, pursuant to the provisions of the public health law, the state commissioner of health enacted certain rules and regulations for the protection from contamination of the public water supply of the defendant, which were regularly published, and which, among oth‑ er things, provided that no person shall be allowed to bathe in the said lake or reservoir, or in any water course of the Chester water supply, and that no manure pile or compost heap shall be located, placed, maintained, or allowed to remain with its nearest point less than 150 feet from the reservoir, or less than 75 feet from any water course of the Chester water supply, and containing other provisions which would interfere with the plaintiff's use of his lands adjacent to the said lake or reservoir in the manner in which said lands are commonly used.  It also appears that the plaintiff has for several years leased camping privileges upon his land adjoining the waters of the said lake or reservoir to parties for the summer months, and that in the year 1906 the defendant caused a lessee of the plaintiff, who was in possession of a camping privilege adjoining the waters of said lake, to be arrested on the charge of unlawful bathing therein.  It is ad‑ mitted that the defendant has never acquired or sought to acquire the plaintiff's lands adjacent to the said lake or reservoir, and has made no compensation for the damages which he may sustain by reason of being deprived of his rights as a riparian owner.

My opinion is that the plaintiff may maintain this action, and that the defendant should be enjoined from enforcing or attempting to

enforce the said rules and regulations of the health commissioner against the plaintiff until it has acquired the right so to do, by making compensation to the plaintiff or by tendering to him an amount equal to all damages which he may suffer on account of being deprived of his rights as the owner of lands along the waters of said lake and adjacent thereto. An enforcement of the said rules and regulations against the plaintiff would materially interfere with the use of his land for farming purposes. The proof shows that about 140 acres of the plaintiff's farm of 492 acres is on the watershed, and that he has a frontage of about 2,000 feet on the lake, and that there are several lateral drains and well-defined channels running into waterways which in turn flow into the pond, and the enforcement of these regulations would prevent the use of manure ·or other fertilizer upon a large part of the watershed of the plaintiff's farm, and would prevent the use of that part of his farm for barns, dwelling houses, and outbuildings.

Until the plaintiff's rights in the lake are acquired by the village of Chester by purchase or condemnation, he undoubtedly has a right to use his lands in any reasonable manner, for living and agricultural purposes, even though the drainage therefrom may pollute the waters of the reservoir; and he likewise has a right to use the waters for boating, bathing, fishing, swimming, etc., for himself or his guests and lessees, so long as such use is reasonable; and uses which otherwise would be reasonable cannot be made unreasonable by the fact that a municipality sees fit to adopt the lake for a water supply. In that event it becomes the duty of the municipality to purify its water supply by the acquisition of sufficient adjacent property to accomplish that result, and by compensating those who theretofore were making lawful and reasonable use of the water, where such use may interfere with or have a tendency to pollute the water supply of the village. It may be conceded, for the purposes of this decision, that the bathing of the human body in the waters of the lake will have a tendency to pollute the waters thereof and render them unfit for general village purposes; but that fact does not give the village of Chester the right to interfere with the plaintiff's common-law rights in the waters of the lake, where they cover a part of and are adjacent to other parts of his premises. Those rights existed before the village acquired any right in the said lake, and before the village can take away from the plaintiff those reasonable uses to which the law has always entitled the riparian owner, it must make just compensation to the plaintiff.

The public health law, under which the rules and regulations in question were enacted, recognizes the correctness of this view of the case, and section 72 of that law (Laws 1893, p. 1519, c. 661), as amended by chapter 484, pp. 1237, 1238, of the Laws of 1904, provides that the municipality in whose interest a rule or regulation is enacted and enforced shall make compensation for all damages occasioned thereby; and the Attorney General of the state has rendered an opinion in reference thereto, in which he says:

"In my opinion the proper and only lawful construction which can be placed on section 72 of the public health law is that all damages and injury to the owner of any property affected by changes required to be made to comply

with the rules of the department of health must be ascertained and paid prior to the taking possession of the property, and is a prerequisite to the enforcement of said rules in all cases, except such as are a nuisance in and of themselves, in which case the department of health would have power and authority, outside of sections 70, 71, and 72, to abate the same. Any other construction would to my mind, render the law unconstitutional. In brief, I am of the opinion that the state department of health can make and promulgate rules regulating and controlling the use of premises surrounding the sources of water supply in all regards, and that a person violating these rules can be punished as provided by the penalties; but before such punishment can be inflicted the corporation for whose benefit the rules are made and established must pay or tender to the owner of the property affected by the enforcement of such rules an amount equal to all damages for making the change necessary."

This opinion is incorporated in and published as a part of the rules and regulations enacted for the protection of the Chester water supply. It cannot be seriously contended that a village or city can acquire a part of a pond or lake, and a part only of the land along and adjacent thereto, be the part acquired large or small, and then by regulation and rule of the state commissioner of health shut off every other adjacent landowner from the ordinary and reasonable use of the waters adjacent to and covering a part of his land. Such a right on the part of a municipality would be confiscatory of the property, and the rights incident thereto, of the other landowners. In short, it would be taking their lands and the property rights incident thereto without compensation. The uses to which the plaintiff has put his lands adjoining the lake are ordinary, reasonable, and proper, and the defendant cannot interfere therewith, without making just compensation for the damage which the plaintiff may sustain.

The learned counsel for the defendant make the point that the state department of health had express authority to enact the rules in question. There is no question as to that, nor is there any dispute that such rules were necessary for the protection of the defendant's water supply; but these concessions do not affect the conclusion to which I have arrived that the village of Chester, before enforcing such rules against the plaintiff as may interfere with his natural and reasonable uses of the waters of the lake, must make or tender compensation.

My conclusion is that the plaintiff is entitled to judgment restraining the defendant from interfering with his use, and the use by his family, guests, and lessees, of the lake and the waters thereof for bathing, boating, fishing, swimming, watering cattle, and such drainage therein from his farm and the buildings thereon as is natural and usual, but without damages, and for the costs of this action.