COMMONWEALTH WATER COMPANY, Appellant, *v.* HENRY C. BRUNNER and FANNIE A. BRUNNER, Respondents.

Second Department, November 18, 1916.

Waters and watercourses — suit by water company to enjoin misuse of waters of lake — right of owners of upland to use of said waters — evidence — when deeds of land adjoining lake do not include bed of lake — prescription — adverse user — acquisition of interest in bed of lake by condemnation — evidence as to family tree — action by one tenant in common — right to cut ice on such waters.

Suit by a domestic water company supplying villages with water from a small inland fresh-water lake, to enjoin the defendants from fishing, boating, bathing, cutting ice, etc., in and upon said lake, and from doing anything else thereon or therein which may interfere with the rights of the plaintiff in said waters.

*Held,* that a finding that the ownership by defendants of a part of the bed of the lake gives to them, at common law, the right of fishing, boating and bathing in the waters of the lake generally, is contrary to the law of this State, which limits such rights to the waters of the lake lying over that part of the bed which the defendants own;

That the fact that the grants of the land surrounding the lake did not retain title to any of the surrounding upland, and that from time immemorial until plaintiff objected, any one whether living about the lake or not has, at will, boated, bathed and fished in its waters, do not establish that deeds of various tracts surrounding the lake bounded by the shore thereof, were intended by the grantor and grantees to include the bed of the lake in front of the respective tracts to the center;

That proof that until the plaintiff objected every one had used the lake at pleasure to boat, bathe and fish in and upon its waters, did not establish that defendants had obtained such rights by prescription and adverse use, because such user was merely by the sufferance of the owners and without any claim of right on the part of the users;

That findings and conclusions to the effect that plaintiff had established no title to any part of the bed of the lake were against the evidence, because the plaintiff had by condemnation proceedings acquired at least some interest as a tenant in common in a portion of the bed of the lake;

That testimony as to the family tree of the former owner of the lake, prepared by a descendant from said owner, was properly received in evidence.

While one tenant in common cannot, in his own name alone, maintain an action for trespass, yet he is as against others entitled to the possession of the premises and may maintain such an action as this.

The grant by the defendants to the plaintiff or its predecessor of the right to flood the lake and to take the waters for domestic consumption, carried with it by necessary implication the release to the plaintiff or the giving up by the defendants to the plaintiff of the latter's rights to bathe in the waters of the lake upon the defendants' land, or to fish or boat therein or thereupon by themselves, or at least by their numerous guests, and the plaintiff is entitled to an injunction restraining such use.

The defendants may, however, be permitted to cut ice over the bed of the lake owned by them.

APPEAL by the plaintiff, Commonwealth Water Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Orange on the 3d day of November, 1915, dismissing the complaint upon the merits after a trial at Special Term.

*Ellwood M. Rabenold* [*Allan R. Campbell* with him on the brief], for the appellant.

*Graham Witschief*, for the respondents.

MILLS, J.:

This action was brought by the plaintiff, a duly incorporated domestic water company supplying the villages of Central Valley and Highland Mills, in Orange county, with water from Cromwell lake, to enjoin the defendants from doing certain acts, viz., fishing, boating, bathing, cutting ice, running motor boats, watering cattle, in and upon the waters of said lake, and from doing anything else thereon or therein which may interfere with the rights of the plaintiff in said waters.

Cromwell lake is a small inland fresh water pond of about

sixty-four acres in area, being about 1,000 feet wide and between 2,000 and 3,000 feet long, and was formerly known as Hazard's pond. In the latter part of the eighteenth century, four-fifths of the lake, being all except the southern one-fifth, belonged to John Earl, who died in 1786, leaving a will by which he devised to his son Ezra the said premises, together with certain upland about the lake. The decision finds that all parties to the action claim under said Ezra Earl. He died in 1806, intestate, having conveyed away all of said upland by conveyances which in general bounded by the shore of the lake. Those conveyances in terms included only two or three small portions of the said Earl four-fifths of the bed of the lake. One of those portions, at the northeasterly end of the lake, has come into the ownership of the defendants; but that portion includes merely a small bay and is only 60 feet wide at its widest part. All the other deeds from Earl, through which defendants claim, give the other bounds as along the shore of the lake.

The predecessor company of the plaintiff, to whose rights the plaintiff has succeeded by due conveyance, appears to have begun to take water from the lake for its purposes in about 1895, without in any manner having acquired any individual rights therein. About 1898 it obtained from the owners of the upland about the shores of the lake written releases and consents authorizing it to raise the waters in the lake one foot, and to overflow such land of the owners as might be necessary, and to draw the water from the lake for its purposes down to low-water mark. The such paper executed by the defendant appears in full in the record. In 1901 the plaintiff, by condemnation proceedings, acquired the rights of certain named persons as heirs of Ezra Earl in the bed of the lake. The defendants are the owners of two tracts at the northern end of the lake, which came originally from the Earl lands, viz., the Hudson tract, which includes no part of the lake bed, and the Hallock tract, which includes the small section of the lake bed above stated. The first deeds thereof in 1892 were to the defendant Henry C. Brunner and one White, but before the commencement of this action the title had, by mesne conveyances, vested in both defendants. Apparently the Hallock

tract had contained less than one acre, and had a lake frontage of only about 260 feet, and included only about one-sixth of an acre of the lake bed, while the Hudson tract contained about eight acres and had a lake frontage of about 225 feet and included no part of the lake bed.

The record seems to me to be somewhat obscure as to just what is the size of defendants' plot under the waters of the lake. At the request of plaintiff the learned trial justice found that at the most it extended only 60 feet into the water, and in his decision that it so extended only about 50 feet. He also found that the deed of the Hallock tract, under which defendants claim, did by intent of the parties include all of the land under water which Hallock owned in front of the upland conveyed; and that such land extended about 300 feet into the lake. The testimony of the surveyor seems to indicate that the utmost length of the defendants' line within the water is 224 feet, and the utmost width of defendants' land under water is 60 feet.

Taking defendants' land under water as a parcel 224 feet long by an average width of 30 feet, which would be approximately accurate, it contains about one-sixth of an acre or about one-three-hundred-eighty-fourth of the entire bed of the lake, or one-two-hundred-ninety-fourth of the original Earl four-fifths thereof.

About 1880 the Brunners moved from Brooklyn to Highland Mills, near this lake, and in 1888 Mr. Brunner leased the Hudson tract, or the part of it lying upon the lake. Prior to that time there had been a fishing club, with a house, located on the Hallock tract, for which a nominal rental was paid. In 1888 Mr. Brunner, upon the land leased from Hudson, put up a building as a boat house and a sort of stand, where he sold cigars and soft drinks and rented boats. In the nineties he built a hotel, and ever since he has carried on there a hotel business, and as an adjunct thereto has maintained many boats upon the lake, cut ice upon it and had bath houses, and even held horse races upon the ice and run ice boats not only over the part of the bed owned by the defendants, but generally over the entire lake. The defendants had made such use of the lake continuously since 1888. Indeed, all the people living

about the lake, and even others, have for many years used it generally to boat, fish, bathe, cut ice and run races with boats or horses on the ice.

The learned trial justice found, in effect, (a) that plaintiff had established no title to any part of the bed of the lake; (b) that the grantor in the deeds of the lands out of the Earl part of the lake intended that his deeds, although not including the bed of the lake in their description, should nevertheless convey such bed, in front of the premises described, to the center of the lake, or rather at least should include the right to boat, fish, bathe, etc., in the waters of the lake generally; (c) that the owners of land about the lake or the Earl part thereof, including the defendants, have by prescription such rights, and also that the defendants have acquired such rights by adverse user under a claim of right. Upon those facts, as conclusions of law, he concluded (a) that such rights are common-law rights incident to the ownership by defendants of land in part covered by water of the lake; (b) that the defendants have the right to take ice from the water over the bed owned by them; (c) that by prescription the defendants have acquired the rights to boat, bathe and fish in the lake apparently generally to a reasonable extent; (d) that the defendants, by their said release and consent, have not released their such rights; and (e) that all the uses which defendants have made of the lake are reasonable and within their rights. Of course, from those conclusions judgment for the defendants necessarily followed.

Respecting the decision, it is to be noted in the first place that the conclusion that ownership by defendants of a part of the bed of the lake gives to them at common law the right of bathing, boating and fishing in the waters of the lake generally, is contrary to the settled law of this State. That law is that such rights are limited to the waters of the lake lying over that part of the bed which the defendants own. This very point was expressly so decided by the Appellate Division of the Third Department in *Tripp* v. *Richter* (158 App. Div. 136, 139), wherein it was held that the defendant, as the guest. and by the permission of the owner of a part of the bed of such a lake, had no right to row, bathe or fish in the waters thereof

over other parts of the bed which were owned by the plaintiff. In the famous Croton lake case (*Gouverneur* v. *National Ice Co.*, 134 N. Y. 355), it was decided by the Court of Appeals that whatever may be the law in other States, notably the New England States, the law of this State is that the principles of private ownership apply to the bed of such a small lake or pond, the same as to any other land. The very point was decided to the like effect in *Lembeck* v. *Nye* (47 Ohio St. 336; 8 L. R. A. 578), cited at length in appellant's brief.

In the second place, I think that the findings that the deeds of the various tracts surrounding the Earl part of the lake were intended by the grantor and grantees to include the bed of the lake in front of the respective premises, to the center, were contrary to the evidence. There certainly is in the record no evidence tending to show any such intent on the part of the parties to those deeds. There is nothing at all bearing in that direction, save the naked fact that the grantor did not retain title to any of the surrounding upland, and the further fact that from time immemorial, until plaintiff objected, any one, whether living about the lake or not, has at will boated, bathed and fished in its waters generally. I do not consider that those facts alone warrant the finding that the parties to said deeds intended that they should convey beyond the exact and definite bounds given therein.

In the third place, I think that the findings and conclusions that the defendants have, by prescription and adverse use, gained such rights in the lake, were contrary to the evidence and the law. All that the proof shows in that direction is that until the plaintiff recently objected, any one and every one has used the lake at pleasure to boat, bathe and fish in and upon. That sort of user does not give to the public or to any owner of land bordering upon such a lake any such right. Such user is merely by the sufferance of the lake owner or owners and without any claim of right on the part of the users. It constitutes only a mere naked trespass without the assertion of right, and can give no right however long continued. (*Tripp* v. *Richter, supra,* 138.)

It is a matter of common knowledge that until within quite recent years, mostly the last decade, it has been the common

custom of the country for landowners to allow people, especially their neighbors, to hunt and fish at will over the lands of such owners. There is scarcely a rural community which does not contain some old sportsman resident who, if the doctrine of the decision of this case be good law, could well claim to have gained, by prescription through fifty years' user without objection of the owners, the right to boat and fish in one or more such lakes and along several miles of trout streams, and to hunt over several square miles of territory all in lands belonging to other people.

It is evident that until recent years the locality of Cromwell lake has been quite unsettled. In the case of *Concklin* v. *N. Y. C. & H. R. R. Co.* (149 App. Div. 739), which had been tried before me at Special Term, this court held that fifty years' use of open railroad land by an adjoining owner, in passing over it with many other people, was to be deemed permissive and so had not created any right of prescription or adverse use when the railroad company at the end of the fifty years attempted to fence in the land. The decision of this court in that case stands, as the appeal therefrom was dismissed by the Court of Appeals (207 N. Y. 752).

In *Nellis* v. *Countryman* (153 App. Div. 500) the Appellate Division of the Third Department held that the mere toleration by one farmer of his neighbor in passing for any length of time by a short cut over his farm, gives no right to do so. There are many farms over which such neighborly license for short-cut passage has been permitted for generations, and yet I think no court would hold that such user has created any easement right.

I think, also, that the findings and conclusions to the effect that plaintiff has established no title to any part of the bed of the lake were against the evidence. I think that the plaintiff did, by condemnation proceedings, acquire at least some interest as a tenant in common in all that part of the four-fifths of the bed of the lake which the common ancestor, Earl, had owned and had not conveyed away, which is of all that four-fifths except the small section owned by the defendants, and one other small section.

As to the parties to the condemnation proceeding the judg-

ment or final order, with payment of the awards, must be as effective against those defendants as the deeds of such parties to the plaintiff would be. It seems to me that the testimony of the Earl family tree, which respondents' counsel claims was incompetent evidence, must here be treated as competent proof. It was received in evidence, although over the objection of the defendants. The witness who made up said family tree or statement of the descendants of Ezra Earl was himself such descendant, and I think it was properly received in evidence. It may be that those proceedings were not effective to transfer to plaintiff the rights of all the heirs of Ezra Earl in said four-fifths of the bed of the lake, but it is quite evident that they were effective to transfer to the plaintiff very much the greater interest therein. While one tenant in common cannot in his own name alone maintain an action for trespass (*De Puy* v. *Strong*, 37 N. Y. 372), yet he is, as against others, certainly entitled to the possession of the premises, and, I think, can maintain such an action as this, as he may in his own name alone maintain an action of ejectment against a person who is not also a tenant in common. (See Code Civ. Proc. § 1500.)

The learned trial justice also found that the defendants, by their grant and release dated October 10, 1898, and above referred to, conveyed to the water company, for a valuable consideration, " the exclusive right to divert and use the water from Cromwell Lake for domestic and household consumption;" and yet he found, as conclusion of law, that defendants had not released their riparian rights in the lake. The evidence established that at about the same time the water company obtained from each shore owner a similar instrument. The same year it obtained from Annie V. Whitlock, the owner of lands abutting upon the outlet part of the lake, the right to lay and maintain its pipes through her land "to the end that it may use the waters of said lake for the purposes of its incorporation," and also the right to raise the water of the lake one foot and to draw water therefrom for said uses. The instrument between those parties reserved to the owner the right to use water from the lake upon her premises, but the instrument given by the defendants contains no such reservation. The appellant's counsel contends that such grant

by the defendants to the plaintiff's predecessor company of the "exclusive right" to divert the water from Cromwell lake for domestic and household consumption carried with it by necessary implication the prohibition of the defendants from making any use of the water inconsistent with such use of it by plaintiff; and that the rules established by the State Commissioner of Health for the protection of said water supply indicate what uses by the landowner (the defendants) are so prohibited. Those rules were duly published. The learned counsel for the respondents contends that such grant and release by the defendants does not operate to restrict their rights to the use of the waters of the lake. In support of this contention he cites *Hazleton* v. *Webster* (20 App. Div. 177) and *George* v. *Village of Chester* (202 N. Y. 398). In the first of those cases the Appellate Division of the Fourth Department held that an owner of the bed of the lake in front of his upland, to the center thereof, did not, by granting to the mill owner upon the outlet the right to maintain a dam and flood the lake and to use the water for said mill, lose or cede his right to cut and take ice to a reasonable extent, that is, so as not to unreasonably diminish the outflow. (20 App. Div. 184.) In the other case cited, the *George Case* (*supra*), it was held that the fact that the defendant therein, a municipal corporation, had made such a lake the source of its water supply, and that the State Board of Health for such use had made certain rules to preserve the water of the lake from contamination, which would, at least to some extent, interfere with the ordinary, reasonable uses of its waters by the plaintiff, an owner of upland and a part of the bed of the lake, did not warrant the defendant in interfering with the plaintiff's making such reasonable use of the waters, it appearing, however, in that case that the plaintiff owner had not consented to the appropriation by the village of the water of the lake. (59 Misc. Rep. 554, 555.) The learned trial justice, the same as the one who tried this case, held in that case that the village could not in aid of its water supply, without compensating the plaintiff, interfere with the plaintiff in making such reasonable use of the water as was customary before the village established its works (59 Misc.

Rep. 555), *e. g.,* for bathing purposes, although he held that such use "will have a tendency to pollute the waters thereof and render them unfit for general village purposes." (59 Misc. Rep. 556.)

It may be noted, therefore, that both cases so cited by respondents' counsel differ essentially from the case here at bar, in that in one of them the owner had in no way granted to the water company or village the right to take the water, and in the other the owner had granted the right merely to take it for mill purposes; whereas in the case here at bar these defendants have granted expressly to the plaintiff the right to take the water away for domestic consumption, and the learned trial justice found that such right was exclusive. The counsel for the appellant has failed to cite any decision in point to sustain his contention here, but it seems to me elementary that the grant by the defendants to the plaintiff or its predecessor of the right to flood the lake and to take the waters away for its uses, viz., domestic consumption, carries with it, by necessary implication, the release to the plaintiff or the giving up by the defendants to the plaintiff of the defendants' rights to bathe in the waters of the lake upon the defendants' land, or to fish or boat therein or thereupon by themselves or at least by their numerous guests. Indeed, in order to protect plaintiff's granted right of use for domestic purposes, the said rules and regulations appear to me to be reasonable. I think, therefore, that the plaintiff is entitled to an injunction enjoining the defendants from violating the said rules upon or in the waters over the land owned by them.

It is plain that there is no equity in the position of these defendants. By virtue of their ownership of a comparatively small part of the bed of the lake, namely, about one-three-hundred-eighty-fourth of the entire bed or about one-two-hundred-ninety-fourth of the former Earl four-fifths part thereof, they are attempting to use the entire lake as a mere adjunct of their hotel business, to run upon it, for their guests and patrons, some twenty-two boats, and to have it fished and bathed in by practically a multitude of people whom they assemble at their hotel for purposes of gain. They are attempting to do this not only in the waters

over their own land, but in the lake generally — that is, beyond their lands. The latter attempt is undoubtedly beyond their rights.

In the second place, to permit the defendants to make such extended use even of the waters covering their lands would, in my judgment, be to permit them to act in substantial derogation of their grant to the plaintiff or the plaintiff's predecessor of the right to use the waters of the lake for its purposes, that is, for domestic consumption. It seems to me manifest that if a farmer grants to such a water company the right to dam a stream flowing through his lands and create upon his lands a reservoir, in whole or in part, and to draw the water therefrom for the uses of the company, namely, for domestic consumption, he by necessary implication deprives himself of the right to make any use of the waters in such reservoir detrimental to the use of the waters by the company for such purposes, even if he does not thereby deprive himself of the right to make any use of such waters. (*Johnstown Cheese Mfg. Co.* v. *Veghte,* 69 N. Y. 16.)

I recommend, therefore, that the judgment appealed from be reversed, with costs, and that a new judgment be rendered in favor of the plaintiff for the substantial relief asked for in the amended complaint, except as to the cutting of ice over defendants' own land, upon new findings and conclusions made here. To this end I recommend that the following findings and conclusions in the decision be reversed or modified as follows, viz.:

*Reversed.* Findings sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, twenty-seventh, twenty-eighth, thirty-first, thirty-third and thirty-fourth; and conclusions of law 4, 5, 6, 7, 8 and 9.

*Modified.* Conclusion of law 1, by inserting after the words "Cromwell lake," the words "so far as the same cover lands owned by defendants;" and by omitting the word "adjacent;" and by adding, at the end of the conclusion, the words "except so far as the defendants granted those rights to the plaintiff by the instrument executed by them and dated October 10, 1898."

I recommend also that this court make the following new

findings and conclusions in harmony with the views herein-before set forth, viz.:

*Findings.* (1) Plaintiff's proposed finding III; (2) plaintiff's proposed finding V; (3) plaintiff's proposed finding IX; (4) plaintiff's proposed finding XVIII, changing therein the word "this" to "their," and after the word "release" inserting "dated October 10, 1898;" (5) plaintiff's proposed finding XIX; (6) plaintiff's proposed finding XX; (7) that the defendants have not gained any right by prescription or adverse use, to boat, bathe, fish or take ice in, upon or from the waters of said lake overlying the land in the bed thereof owned by the plaintiff, or in any part of the bed thereof not owned by the defendants; (8) plaintiff's proposed finding LV; (9) plaintiff's proposed finding LVII; (10) plaintiff's proposed finding LXX-A.

*Conclusions of Law.* (a) That the defendants have no right to boat, bathe, fish, take ice, race horses upon the ice, or do any other act in or upon any part of said lake under which they do not own the land.

(b) That by their grant and release, dated October 10, 1898, the defendants conveyed to the plaintiff's predecessor the right to prohibit the defendants from using the waters of said lake, over and upon the land owned by them, in any manner which will pollute those waters and render them unfit for plaintiff's use in supplying the inhabitants of said villages with water for domestic consumption; and that the plaintiff has succeeded to all the rights of its said predecessor under said instrument.

(c) That the uses being made by defendants of said waters in permitting themselves and their guests to bathe, fish and boat in and upon the same, are polluting and, if continued, will pollute said waters and render them unfit for such domestic consumption; and that the plaintiff, by said grant and release, was fully authorized to prohibit such uses and fully justified in attempting so to do, as it has done.

(d) That the plaintiff is entitled to an injunction enjoining the defendants, their guests, agents and servants from in any manner entering upon the waters of said lake, over the land so owned by the plaintiff as above found, which lands are described in said new finding of fact 1.

(e) That the plaintiff is entitled to an injunction enjoining

the defendants from disobeying the said rules and regulations adopted by the State Commissioner of Health, and in particular from boating, fishing or bathing in or upon the waters of said lake, over the lands owned by the defendants, which are described as follows: (Here insert accurate description to be settled upon notice); and from doing any other act in or upon said waters, which may pollute the same and tend to render them unfit for domestic consumption, without the written permission of the plaintiff.

(f) That the plaintiff is entitled to have and enter judgment accordingly, with costs.

JENKS, P. J., CARR, RICH and PUTNAM, JJ., concurred.

Judgment reversed, with costs, and a new judgment directed to be entered in favor of the plaintiff, with costs, in accordance with opinion.