OPINION OF THE COURT
Norman A. Mordue, J.
The petitioner has brought an action pursuant to CPLR article 78 as a result of the denial by the Planning Board of the Town of Tully of petitioner’s request for preliminary approval of the filing of a subdivision plat map.
The background of this litigation is as follows: Petitioner is the contract vendee of 65 plus acres of land including 2 ponds (Round Pond and Gatehouse Pond) located in the Town of Tully, County of Onondaga, State of New York. Petitioner desires to subdivide approximately 18.7 acres of this land into 7 separate residential building lots which will each border on its western boundary either of the 2 ponds. The land encompassing the proposed subdivision is zoned residential R-l and the only permitted use is for single-family residences.
On February 23, 1987, petitioner appeared before the Planning Board accompanied by his site planning consultant to present a sketch plan of the proposed subdivision. Issues informally discussed were (1) whether the public would have continued access to the ponds, (2) percolation rates, (3) wetland boundaries, (4) septic systems, (5) a highwater benchmark, and (6) a need for petitioner to complete a State environmental quality review to accompany petitioner’s request for approval of his preliminary plat plan which was expected at the next Planning Board meeting in March.
On March 23, 1987, petitioner appeared before the Planning Board assisted by his consultants, Stephen Beuchner and Cheryl Doble, of the Reiman-Beuchner Partnership, Landscape Architects, and applied for preliminary plat plan approval of the seven lots. The Planning Board was advised by petitioner that wetlands boundaries would be staked in the field by New York State Department of Environmental Conservation personnel within the next two weeks, that deed restrictions would be developed to prevent the cutting of trees *402 along the shoreline and to protect and insure the proper function of individual septic systems, and after lengthy discussion regarding public access to Gatehouse Pond, that petitioner would not permit the public to fish this pond.
Additionally, the Planning Board performed a preliminary scoping of the long-term environmental assessment form and advised petitioner of several items that might constitute significant adverse impacts should no mitigation measures be identified as part of this project. Petitioner then agreed to prepare a part III attachment to the environmental assessment form for final scoping by the Planning Board at the April 1987 meeting.
On April 27, 1987, petitioner again appeared before the Planning Board at which time, among other matters, there was a review of a submission previously prepared by the petitioner and delivered to the Planning Board on April 15, 1987. This submission was in response to the State environmental quality review and environmental assessment form concerns that had been expressed at the March meeting.
Subsequent to the above review, the Planning Board entered into considerable discussion with the petitioner pertaining to the issue of public access to Gatehouse Pond for fishing and boating. Again, petitioner maintained his position that the ponds are privately owned and, as such, no public rights would be impinged upon.
During this discussion concerning public access, Mr. Richard Jean, a Board member, was an outspoken proponent of public access to Gatehouse Pond and made a presentation to the Planning Board of 12 handwritten letters he had assembled from several residents of the town, advocating a continuation of fishing and boating use by the public of Gatehouse Pond. Additionally, he presented a proposed sketch of how the shoreline of Gatehouse Pond could be constructed so as to increase its usefulness to the public, and suggested that petitioner consider implementing this concept as part of the subdivision plan.
Ultimately, the Board unanimously adopted a resolution finding that the proposed action was unlisted and that "the proposed action will not have a significant effect on the environment because of mitigation measures set forth in Response (Part three of long form environmental form) and this resolution shall constitute a negative declaration for the purposes of Article 8 of the Environmental Conservation Law *403 of the State of New York for the following reasons: (1) the proposed application does not exceed any of the thresholds set forth in Part 617; [and] (2) the measures set forth in Part three of Environmental Assessment Form C entitled Response to Planning Board Questions, will mitigate any impact on the environment.”
On June 22, 1987, the Planning Board conducted a public hearing on the proposed subdivision. Petitioner’s site architect presented and described an updated subdivision map. It was shown that the subdivision would comply with all zoning regulations, that no variances were being sought by petitioner, and that lots would be deeded so that the lot owners would have a right in common with other lot owners to the use of the ponds. Detailed deed restrictions designed to protect the water quality were also presented by petitioner. All changes and suggestions made by the Planning Board at earlier meetings were incorporated into the preliminary subdivision plat submitted at this meeting, except for those demanding public access to the ponds.
During this public hearing, questions were raised by people in attendance concerning public access to the lakes, ownership of the property, price of lots, condemnation by the town, traffic, location of structures, timing for the project and procedures.
On July 27, 1987, the Planning Board met to render a decision on petitioner’s request for preliminary approval of the subdivision. A motion was made by Planning Board Chairman John Snavlin to pass a resolution, subject to certain conditions, granting approval to petitioner. This motion was seconded by Board member William Stiteler. Thereafter, extended discussion ensued during which, Board member, Richard Jean, stated that "he wanted the lands opened to the public”. In fact, Mr. Jean made a motion to amend the proposed Snavlin resolution and require the owner to make the ponds adjoining the subdivision open to the public for fishing, boating, canoeing, and other outdoor activities. This motion was seconded by Ms. Bodah and approved by a vote of 3 to 2 (Bodah, Jean and Gorman in favor; Snavlin and Stiteler opposed).
During comments preceding the vote on the Snavlin resolution as amended, Mr. Jean stated publicly to petitioner, directly and pointedly, "that had petitioner agreed at the outset to public access, the proposed subdivision would have been *404 approved”. The Board then denied the Snavlin resolution by a vote of 3 to 2, with Jean, Bodah and Gorman opposed, while Snavlin and Stiteler were in favor. The reasons for this denial were not stated by the Board.
Now that it was finally apparent that petitioner was unwilling to agree to the Board’s demands for public access, a new resolution denying subdivision approval altogether was moved by Ms. Bodah, the newest Board member, who was attending her first meeting. Ms. Bodah offered the following reasons as the basis for denying subdivision approval altogether: (1) to preserve and protect the ponds and wetlands from developmental pollution; (2) because of a need to preserve and protect the above and underground water system and/or aquifer which supplied the area; (3) to preserve the unique glacial area for future generations; and (4) because there are areas available and under development all around the ponds and wetlands, a buffer and/or green area should be provided. This Bodah resolution was seconded by Mr. Jean and passed by a vote of 3 to 2 (Bodah, Jean and Gorman in favor; Stiteler and Snavlin opposed).
It should be noted, that just prior to making the motion for this last resolution, Ms. Bodah had attempted to make a motion to have the petitioner’s property condemned by the town. Ms. Bodah was advised that such a motion was out of order at that time.
After approval of the Bodah resolution denying subdivision altogether, the Planning Board handled several unrelated matters. However, the final item of business transacted at this meeting was a motion made by Richard Jean, seconded by Robert Gorman, asking the Town of Tully to condemn and purchase the Gatehouse Pond area on both sides of the pond (in effect, the proposed subdivision) and to work with Onondaga County Parks and Recreation so that ultimately, this area would be a nature center and wildlife refuge, open to the public. Board members Bodah, Jean and Gorman voted in favor of this motion while Stiteler and Snavlin abstained.
Petitioner has brought this article 78 proceeding seeking to have the determination of the respondent vacated on the grounds that the determination is arbitrary and capricious, affected by errors of law and is an abuse of the Planning Board’s discretion; the grounds for denial are not, on the entire record, supported by substantial evidence; the Planning Board’s actions are a violation of petitioner’s constitutional *405 rights, and are confiscatory; the Planning Board’s actions are in direct violation of its authority and have caused and will continue to cause damage to petitioner; and the determination is a nullity, because two members of the Planning Board who voted in favor of the determination were disqualified from voting.
Any fair reading of the history of this litigation and the record before the Board leads one to conclude with certainty that the Planning Board wanted the ponds on petitioner’s property to remain available to the public for fishing, boating, recreation, etc. In the Planning Board’s final resolution denying approval, the only derogatory statement made regarding petitioner’s proposed plan is that "there appeared from the public hearing opposition to any plan which would foreclose the use by the public of the Gatehouse Pond and Round Pond and it appeared from the comments offered by the people present that these ponds had been used by the public for fishing and boating, notwithstanding the objection of Allied Corporation, for upwards of forty years.” It is clear to this court that had petitioner acceded to the Board’s desire to keep the ponds public, preliminary approval of the plat plan would have been a fait accompli.
One of the first items that should be addressed is the issue of whether the public has a prescriptive right of access to the two ponds in petitioner’s proposed subdivision for the purpose of public fishing, boating, and recreation. It is unequivocally the law that the public does not have that right. The ponds are privately owned, and, as such, there exists no right to public use. (See, Gouverneur v National Ice Co., 134 NY 355.) The public cannot acquire a right to use the ponds by prescription or adverse use. (Commonwealth Water Co. v Brunner, 175 App Div 153.)
The Planning Board cited four reasons to justify its denial of a subdivision altogether. The court, having reviewed these stated reasons in light of the testimony and proof presented to the Board during its meetings and discussions with the petitioner and during the public hearing held June 22, 1987, determines that the respondent’s denial of preliminary approval was arbitrary and capricious, affected by errors of law, an abuse of discretion and not supported by substantial evidence.
Taking each of the reasons stated by the Planning Board, the court finds as follows:
*406 1. To preserve and protect the ponds and wetlands from developmental pollution.
It is certainly clear from the record that this goal "to preserve and protect” is an admirable goal of the Planning Board; however, there is nothing in the record to substantiate that petitioner’s plans would cause any pollution to the ponds or the wetlands. In fact, petitioner has taken every step requested by the Planning Board to insure against pollution to the ponds and wetlands. Therefore, there is no basis within the record before this court for the Planning Board to have denied the petition for this stated reason.
2. Because of a need to preserve and protect the above and underground water system and/or aquifer which supplies the area.
Again, this need is an appropriate concern for the Planning Board. However, as with the first reason given by the Planning Board in its final determination, this goal does not justify denial to the petitioner.
The record clearly demonstrates that petitioner’s plan is geared to the preservation and protection of the water system and the aquifer which supplies the area. Respondent can point to no substantial proof in the record which would permit denial of preliminary approval to petitioner on this ground.
3. To preserve the unique glacial area for future generations.
This third cited reason for denial of preliminary approval is truly without proper foundation. This reason appears to be an afterthought by the Board to justify its denial of petitioner’s application. There was not a scintilla of proof adduced before the Board which would show that the subdivision of this land into seven parcels would in any way affect the "unique glacial area for future generations”. In fact, petitioner is able to subdivide this land into four parcels without Board approval. (See, Local Laws, 1979, No. 1 of Town of Tully, art II, § 1 [A].) Since no evidence was brought forth demonstrating that the additional three parcels would have a deleterious effect on this area, the Board’s actions are wholly lacking in merit.
4. Because there are areas available and under development all around the ponds and wetlands, a buffer and/or green area should be provided.
Here again, is an attempt by the Board to justify its denial of petitioner’s application. There is no proof before the Board that a buffer or green area should be provided due to other developments in the area. Furthermore, a review of the Plan *407 ning Board minutes reflects no discussion of the need for the Gatehouse Pond area to be a buffer between other subdivisions. It is incongruous to permit this stated reason to stand, in light of the fact that the town would permit four residences to be built on the same land without objection.
It is axiomatic that the Planning Board’s determination must have a rational basis and be based upon substantial evidence. (Matter of Currier v Planning Bd., 74 AD2d 872, affd 52 NY2d 722.) "In final analysis, substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically”. (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 181.)
It is clear that none of the four above-stated reasons for denial of subdivision approval is based upon substantial evidence before the Planning Board. Accordingly, the petitioner’s request to vacate the determination of the Planning Board is granted and respondent is directed to approve the petitioner’s application for a seven-lot subdivision as outlined in his preliminary plat plan. (See, Matter of Diamond v Specter, 39 AD2d 942.)
The court need not address petitioner’s contentions regarding the disqualification of Board members Jean and Bodah in light of this decision.